WARBINGTON *v.* STATE

405 S. W. 2d 281

Opinion delivered June 6, 1966
[Rehearing denied July 25, 1966.]

*Marvin B. Gambill,* Memphis, Tenn., for appellant.

*Bruce Bennett,* Attorney General, *Fletcher Jackson,* Asst. Attorney General, for appellee.

GUY AMSLER, Justice. On September 30, 1965, appellant was convicted on three morals charges, involving a seven year old girl. The jury fixed his punishment for carnal abuse [Ark. Stat. Ann. § 41-3406 (Repl. 1964)] at five years in the state penitentiary, two years for indecent exposure [Ark. Stat. Ann. § 41-1127 (Repl. 1964)] and one year for unlawful fondling of a child

[Ark. Stat. Ann. § 41-1128 (Repl. 1964)]. Appeal was perfected in apt time.

Appellant's first argument for reversal concerns "merger of offenses." Since all of the charges grew out of the same incident it is contended that the cause should be remanded for a trial on one charge at a time and that the other two either be dropped or presented separately. Neither before nor during trial, nor in his motion for a new trial did appellant raise this point. He permitted the court to consolidate the charges for trial, proceeded through two days of hearings and presented his motion for a new trial without uttering a word in protest.

In *Carter* v. *State*, 230 Ark. 646, 326 S. W. 2d 791, we said:

> "This alleged error was first raised by appellant in his motion for a new trial. It comes too late for this court to consider it. We have consistently adhered to the rule that before an alleged error, in felony cases of a lesser degree than capital, may be considered by this court on appeal, the complaining party must first make an objection, call for a ruling from the trial court, make and preserve an exception from an adverse ruling, and the matter complained of must be assigned as error in a motion for a new trial."

Had the suggestion of overlapping crimes been brought to the attention of the able trial judge he doubtlessly would have taken such action, by way of severance or abatement, as the law and facts warranted. Having, without objection, gone to trial on all three charges, hoping perhaps that if the jury found him guilty it would be of a crime carrying a lesser penalty, he is not in a position to utter initial protest in this court. He was obliged to present his objection to the trial court. *Matz* v. *State*, 196 Ark. 97, 116 S. W. 2d 604; 21 Am. Jur. 2d, Criminal Law, §§ 469, 470.

Since the sentences were all made to run concurrently, it is apparent that the appellant was not prejudiced by a failure of the trial court to order some procedure other than that followed.

It is next contended that "the evidence is insufficient to sustain the crime of carnal abuse." The relevant facts may be stated rather briefly. Appellant had spent the night before the incident complained of with an employee of his named Shipp who lived across the street from the little girl's home in West Memphis, Arkansas. Appellant, with Shipp and others had consumed some alcoholic beverages that night. The next morning about 8:30 Mrs. Shipp came over for a visit with the little girl's mother and shortly thereafter appellant arrived. He had a drink and then went to the store to purchase some items for one or both of the women. Sheila (the girl victim) accompanied him. While on this mission appellant purchased a bottle of liquor. On returning he offered the women a drink but they declined and he took one alone.

Appellant had planned a trip to Tennessee that day so he went to the Shipps' house to get his luggage and start on his journey. Sheila again went with him to say "goodbye." The little girl was gone longer than her mother thought necessary so she asked Mrs. Shipp to investigate.

Shortly after Mrs. Shipp left, the little girl came running home looking "real scared" and entered the bathroom. An examination by her mother revealed that she was bleeding and according to the mother "had been torn and scratched."

Sheila was taken to the family doctor who found a small bruised area, with "a very small amount of bleeding" in the vestibule of the vagina-superior region. This was described as the area external to the hymenal ring. The injury was minimal.

Appellant drove to Savannah, Tennessee, and from there called Sheila's mother during the afternoon and according to the mother asked a number of times, "Are you sure you and the children are all right?" The jury could have weighed this circumstance as an indication of apprehension on the part of appellant concerning what had transpired that morning at the Shipp residence.

The little girl testified that after they entered the Shipp home appellant sat down in a chair and lifted her to his lap; that he placed his hand between her legs inside the front of her pants, moved one finger around; that it hurt and she immediately had a desire to go to the bathroom. Appellant released her but followed her to the bathroom exposing himself at the same time. Shortly thereafter Mrs. Shipp appeared on the scene. Appellant categorically denied any improper conduct with or toward the child. He offered no witness other than himself, except a number of his neighbors who vouched for his good reputation.

The proof was ample for carrying the case to the jury on the question of carnal abuse. *Holland* v. *State,* 237 Ark. 649, 375 S. W. 2d 234 (1964); *Watt* v. *State,* 222 Ark. 483, 261 S. W. 2d 544 (1953).

A further contention for reversal is that the trial court should have stricken the little girl's testimony "as being totally unreliable." *Harris* v. *State,* 238 Ark. 780, 284 S. W. 2d 477 (1964), is relied on. A casual comparison of the testimony of the children in these two cases will demonstrate a marked difference in ability to relate facts.

The direct and cross-examination of Sheila covered 33 pages of the transcript and while there were instances of inability to remember and some minor conflicts, her testimony as a whole evidenced a remarkable ability, for a seven year old child, to remember details and give expression to her views. To illustrate, on cross-examination:

"Q. Did you, personally, talk to Mr. Harrison? [the prosecuting attorney]

A. No, sir. My mother and father did.

Q. What?

A. Sitting there.

Q. Where did they talk to him?

A. In here.

Q. Did you talk to Mr. Fogleman about this too?

A. No, sir. Not here. Mr. Fogleman wasn't here.

Q. Where did you talk to Mr. Fogleman about this?

A. Up there at West Memphis City Hall.

Q. At City Hall. Have you talked to him since that time, since that at City Hall?

A. Not that I remember, except for this morning.

Q. What?

A. Except for this morning, I think, he asked me one question.

Q. Who else have you talked to about this case, this matter?

A. No one.

Q. Have you talked to your mother about it?

A. Yes, sir. My mother and father asked me about it?

Q. Asked, you what?

A. About it.

Q. About it, when was this?

A. The day that it happened.

1078

Q. Sheila, have you talked to your mother and father about this since that Municipal Court hearing?

A. No, sir. Because, Mother told me to go ahead, forget it, because it was over with.

Q. When did she tell you that?

A. The day after.

Q. The day after the hearing in Municipal Court?

A. Yes, sir. She didn't know we were going to have to come up here, I guess.

Q. She didn't know it, you guess, and you haven't talked to her about it this past week any time?

A. Not that I remember.

Q. And haven't talked to her about what you were going to say up here?

A. No, sir. All I told them, I, just going to tell the truth.

Q. When did you tell them that?

A. The day that they told me we were going to have to go in West Memphis, I said, 'Mother, don't worry, I will tell the truth'."

Again on cross-examination:

"Q. You did talk to your mother that day, before you went to the doctor, didn't you?

A. Yes, sir.

Q. She was real excited?

A. She was worried.

Q. What?

A.  Worried.

Q.  Worried. When was she worried?

A.  After I told her."

We unhesitatingly conclude that there was no abuse of discretion by the trial judge in refusing to strike Sheila's testimony.

The motion for a new trial alleges error in refusing appellant's requested instruction no. 3, which was a "cautionary" instruction relating to the testimony of Sheila. It would have told the jury to "consider her testimony with great care and caution, being careful to give it only such weight and credit as it should receive. You should consider her faculty of accurate memory and her ability to observe and relate past events."

The court gave the customary instruction on weight of the evidence and credibility of the witnesses and it would appear that appellant's instruction no. 3, if given, would have removed the child's evidence from the general rule as to weight and credibility without supplying a proper yardstick. The admonition to give her testimony "only such weight and credit as it should receive" would have placed the jurors in the position of having to determine for themselves what criterion to utilize in evaluating her evidence and this is not a procedure to be encouraged.

We have said that the giving of a cautionary instruction is discretionary with the trial court and that such discretion will not be limited unless grossly abused to the prejudice of the accused. *Bradshaw* v. *State*, 211 Ark. 189, 199 S. W. 2d 747 (1947); *Caldwell* v. *State*, 214 Ark. 287, 215 S. W. 2d 518.

There was no abuse of discretion by the court in refusing appellant's requested instruction no. 3 and appellant was not prejudiced thereby.

Affirmed.