Donald McDOUGALD *v.* STATE of Arkansas

CR 87-213                                    748 S.W.2d 340

Supreme Court of Arkansas
Opinion delivered April 25, 1988

*Robert Philip Remet*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant, Donald McDougald was charged with capital felony murder in that he had committed a burglary and in furtherance of that felony, he or his accomplice had caused the death of another. A jury trial was held on May 7, 1987, and appellant was found guilty and sentenced to life without parole. Appellant brings this appeal, raising two points for reversal. We affirm the judgment.

## I

### Ineffective Assistance of Counsel

 Appellant first argues he was denied a fair trial due to ineffective assistance of counsel. Counsel for appellant admitted in opening argument that appellant had participated in the burglary and appellant claims that was ineffective assistance of counsel. This point however, was not raised below and therefore may not be raised on appeal. *Rogers* v. *State*, 289 Ark. 257, 711 S.W.2d 461 (1986); *Sumlin* v. *State*, 273 Ark. 185, 617 S.W.2d 372 (1981).

## II

### Right to Remain Silent Not Intelligently Waived

Appellant next argues that the trial court erred in denying his motion to suppress statements made to the police. His primary

argument is that the confession was not voluntary because at the time he gave it he was under the influence of drugs and alcohol and could not have knowingly and intelligently waived his rights.

While the state has the burden of proving, by a preponderance of the evidence, the voluntariness of a custodial confession, any conflict in the testimony is for the trial court to resolve. While we make an independent determination based on the totality of the circumstances, we will not reverse the trial court unless its determination is clearly erroneous. *Graham* v. *State*, 277 Ark. 465, 642 S.W.2d 880 (1982).

The fact that appellant may have been under the influence of alcohol or drugs at the time of his statement, will not of itself invalidate his confession, but will only go to the weight accorded it. *Kennedy* v. *State*, 255 Ark. 163, 499 S.W.2d 842 (1973); *Johnson* v. *State*, 6 Ark. App. 342, 642 S.W.2d 342 (1982); *Bryant* v. *State*, 16 Ark. App. 45, 696 S.W.2d 773 (1985). Whether an accused had sufficient capacity to waive his constitutional rights, or was too incapacitated due to drugs or alcohol to make an intelligent waiver, has remained a question of fact to be resolved by the trial court. *Baker* v. *State*, 289 Ark. 430, 711 S.W.2d 816 (1986); *Abdullah* v. *State*, 281 Ark. 239, 663 S.W.2d 166 (1984); *Fuller* v. *State*, 278 Ark. 450, 646 S.W.2d 700 (1983); *Hunes* v. *State*, 274 Ark. 268, 623 S.W.2d 835 (1981).

When deciding the voluntariness of a confession we consider a number of factors, including mental capacity, and when an appellant has claimed intoxication from alcohol or drugs, we have made a closer examination of his mental state. We stated in *Kennedy* v. *State, supra*, that the test of voluntariness of one who claims intoxication at the time of waiving his rights and making a statement, is whether the individual was of sufficient mental capacity to know what he was saying—capable of realizing the meaning of his statement—and that he was not suffering from any hallucinations or delusions. We further noted in *Kennedy* that it was significant in making a finding of voluntariness that the appellant answered questions without indications of physical or mental disabilities, that the appellant remembered a number of other details about the interrogation even though she could not remember waiving her rights, and that

a statement was given in a short period of time (four or five hours) after her rights had been read to her.

■ The evidence presented at the suppression hearing indicated appellant had consumed various pills, amphetamines and muscle relaxants, as well as a great deal of alcohol, for the two days preceding his arrest. Jill Harton, who was with appellant when he was arrested, testified appellant was in a confused, drugged state and had to be physically supported by the police when he was taken from her apartment. Some of the officers' testimony indicated they saw evidence of appellant's "binging" and that he was intoxicated to some extent at the time of the arrest. Appellant's own testimony was not that conclusive. The most he could say about his mental condition was that he could not think clearly and was confused. He stated he could not remember going over the rights form or being told he was entitled to a lawyer.

Appellant also relies on the testimony of a psychologist, Dr. Spellman, who specializes in drug counseling. Spellman had interviewed appellant sometime after his arrest and compiled an inventory as to what appellant had ingested prior to his arrest. On that basis, Dr. Spellman concluded there was not time for the drugs to wear off, and appellant was incapable of knowingly and voluntarily waiving his rights.

However, Dr. Spellman had not seen appellant during the time appellant was with the police nor during the interrogation and his conclusion was based on appellant's account of the events. In light of that fact and the evidence presented by the state, his testimony was not persuasive.

The state presented evidence supporting its contention that appellant was sufficiently in control of his faculties to knowingly waive his rights. Appellant was twenty-four years of age, had graduated from high school and stated he could read "pretty well" and understand what he read. He was held for not more than an hour after his arrest before he was questioned and there was no questioning about the incident until the rights were read to appellant. When the Miranda rights were read, appellant was advised of the crime he was accused of and then each right was individually read to him. He was asked after each one if he understood and the officer wrote down that answer. At the end of

reading the rights, appellant initialed each answer and signed the statement. It was only shortly after the questioning began—about two minutes—that appellant began to implicate himself in the crime. The interrogation itself appears to have been no more than two or three hours.

Sheriff Jack Gambill was at the Pine Bluff police department when appellant was brought in. He testified that he had in the past arrested people who were under the influence of drugs and alcohol and was aware of their mannerisms and expressions. He stated he smelled alcohol on appellant's breath but saw no evidence of intoxication in the manner in which appellant walked or in the way he spoke, that he was not intoxicated to the point that he could not understand the conversation he was involved in, and that when he administered the Miranda rights, appellant gave no indication that he did not understand his rights.

Tim Parker, a probation officer with the State of Arkansas, testified appellant could walk on his own and respond intelligently to the questions asked of him. He stated that appellant's manner of speech was fairly straightforward, and at times even detailed. He stated that during his confession to the police, appellant was detailing his escape and how he had gone down some roads to Fordyce; that the sheriff, listening to this account, got lost a couple of times and appellant went back and picked up the threads of the account.

Additionally, appellant's own testimony during the suppression hearing contradicts his position on appeal—testimony he gave that suggests he both remembered his rights being read to him and that he understood them. Furthermore, appellant was able to recall a number of other details surrounding the time of the interrogation, such as the events of his arrest, where he was taken, how long he was detained before interrogation, and a number of details of the interrogation such as initially denying he had any knowledge of the murder. And while appellant claims to have only a limited recollection of waiving any rights, he had amazing recall of the events two days prior and up to the time of his arrest. He testified in great detail, where he was, his movements from one friend's house to another, the times involved, who he was with, and particularly, how much and what kind of alcohol and drugs he had ingested during that time—up to the point of

arrest. There was no evidence, or even a claim by appellant that he was suffering in any way from delusions or hallucinations.

The evidence presented by the state was sufficient to support a finding that appellant was not seriously incapacitated and could understand and appreciate what he was saying and the proceedings around him, and under all the other additional circumstances affecting the confession, that it was given voluntarily. Given the test enunciated in *Kennedy, supra*, and considering the totality of the circumstances, *Douglas* v. *State*, 286 Ark. 296, 692 S.W.2d 217 (1985), we cannot say the trial court was clearly erroneous in finding the confession voluntary.

### Confession Given in Exchange for a Promise or Reward

Appellant also argues his confession was involuntary because it was made as a result of a promise or reward. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982). Sergeant Roy Ryan stated that he told appellant that two other people involved in the murder with appellant would probably be apprehended soon, that they would probably give a statement and it would be to appellant's benefit to give his statement first.[1]

We stated the rule in *Davis, supra*, that if a police official makes a false promise which misleads a prisoner and the prisoner gives a confession because of that false promise, the confession is not voluntary. We further stated that some statements were clearly promises of rewards and it was not necessary to look past the statements to decide the issue. In other cases, the remarks standing alone did not provide sufficient information to decide the question. In those latter cases, not only the statement made to a defendant must be considered, but also the defendant's vulnerability. In *Davis* we reviewed particular "promises" under

---

[1] Sheriff Jack Gambill testified he told appellant he would not hesitate to tell the court, the prosecuting attorney or anyone else about appellant's cooperation. This statement however was made to appellant after he had confessed, and Gambill stated that he had in fact done what he told appellant he would do. *See U.S.* v. *Shears*, 762 F.2d 397 (4th Cir. 1985), where the court found such statements about relaying fact of cooperation to other officials was entirely proper, citing the district court in that case which stated this was almost a given.

this rule against the background of several cases. The vulnerability of a defendant was examined not only in terms of such things as his age and intelligence, as we have already discussed, but also particular factual settings that render a defendant more vulnerable.

■ Ryan's remark to appellant that it would be to his benefit to talk in view of the other two accomplices' position, is not clearly a promise. See discussion of remarks in *Davis, supra*. It is necessary therefore to consider appellant's vulnerability to innuendo under the circumstances of this case.

This case is similar to *Tatum* v. *State*, 266 Ark. 506, 585 S.W.2d 957 (1974). In *Davis* we discussed *Tatum*, where we found that although the defendant in that case was a habitual offender and probably knew his rights, we found the statement, "I'll help you if I can" to be a promise and the resulting confession, involuntary. This we found because the defendant was the first of three persons arrested. In reliance on the police statement, he gave the accomplices' names and a confession. The accomplices were then allowed to plead guilty on negotiated pleas and the accomplices' testimony was used against the defendant.

Here, appellant was the first to be apprehended and he gave his statement after the exhortation that considering he was the first to be caught, it would be to his benefit to give a statement. One of the accomplices, John Sellars, was apprehended on the basis of appellant's information, and he testified against appellant at trial. *Tatum*, however, is distinguishable.

■ The rule in *Davis, supra*, considers not only the false promise of the police and the vulnerability of the defendant, but whether a confession was given *because* of that false promise. So, for example, when discussing the *Tatum* case in *Davis*, we found that confession had been given "in reliance" on the police officer's remark. *See also, Williams* v. *State*, 281 Ark. 91, 663 S.W.2d 700 (1983); 20 Am.Jur.2d *Evidence* § 559 (1967), "In order to make the confession involuntary . . . the promise must, of course, have induced or influenced the confession."

During the suppression hearing, the record reveals nothing said by appellant, either expressly or by implication, that indicates he gave his confession as a result of Ryan's remark. In fact,

appellant stated specifically in reference to Ryan's remark that he didn't know what benefit Ryan would have been referring to. Nowhere does appellant make any statement that he gave his confession because of Ryan's remark, and it appears from appellant's testimony that he did not even understand the remark to be a promise.

Under Ark. Code Ann. § 16-91-113 (1987) [Ark. Stat. Ann. § 43-2725 (Repl. 1977)], as put into effect by our Ark. Sup. Ct. R. 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Finding no error, we affirm the judgment.