Danny Lee MIDGETT v. STATE of Arkansas

CR 93-1040                                    873 S.W.2d 165

Supreme Court of Arkansas
Opinion delivered April 11, 1994

*Val P. Price* and *Christopher M. Jester*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. The twenty-eight year old appellant, Danny Midgett, was arrested and charged by information as a habitual offender for two counts of rape by deviate sexual activity of his two stepdaughters, who were ten and seven years old at the time, and for possession of a firearm by a convicted felon following events on the night of May 8, 1992. Subsequently, the

firearm charge was severed. Following trial by jury, Midgett was convicted on both counts of rape and sentenced to life imprisonment on each to run consecutively. Midgett appeals from that verdict.

The evidence at trial demonstrated Midgett was in the living room of his house on the night in question, and during that time he coerced the younger child to penetrate herself with her own hand, and he inserted his hand into her vagina. Further, evidence showed that Midgett had forced the older child to place his penis in her mouth, he had inserted his hand into her vagina, and had attempted to insert his penis into her vagina. At home during this time but in different rooms were the girls' two brothers and their natural mother. The mother, hearing the cries of her daughters and seeing her husband and older daughter naked together in a chair, left the house and called for help. When the sheriff's department arrived, at least three deputies viewed Midgett through a window as he was attempting to penetrate the older child.

After breaking down the door, the deputies chased Midgett through the house and out into the yard where Midgett was apprehended. At the time of his capture, Midgett was informed of his rights and indicated he was "pleading the fifth," but later gave an inculpatory statement. Evidence showed Midgett had been drinking heavily that night and that he was intoxicated.

At trial, Midgett elected not to present any witnesses or other evidence. For reversal, Midgett argues the trial court erred in failing to suppress his inculpatory statement, allowing the state to amend the information and instruct the jury accordingly, denying his motion for a directed verdict, and refusing to submit certain instructions to the jury. Because we find his arguments without merit, we affirm.

Midgett first argues his inculpatory statement should have been suppressed because it was not voluntarily given. He claims he was drunk, he had invoked his fifth amendment rights and he did not initiate the conversation. At the Denno hearing, the undisputed testimony was that Midgett had been informed of his constitutional rights at the time of his capture.

Deputy Sheriff Allan Hicks, the investigating officer, testi-

fied he first encountered Midgett shortly after midnight when Midgett was being transported from the scene of the crime, and Midgett had requested that he be taken to the hospital for injuries he sustained during his capture. Hicks testified that each time he questioned Midgett about his injuries, Midgett responded that he was pleading the fifth amendment. Hicks also testified that there was a strong odor of alcohol and that Midgett exhibited "at least some degree of intoxication." After Midgett's third response that he was pleading the fifth, Hicks determined Midgett's injuries did not warrant a hospital visit, and Midgett was transported to jail.

Around 2:30 a.m., Hicks met with Midgett at the jail and, still detecting a strong odor of alcohol, asked Midgett how much he had had to drink. Hicks went over the rights form and Midgett stated he understood each question. Hicks then asked Midgett to read the waiver statement and sign the form. Midgett read the statement but refused to sign, and stated that he wished to plead the fifth and wanted an attorney. As Hicks was leaving the room, Midgett asked Hicks to explain the charges against him. Hicks did so and testified Midgett said, "[W]hat he had done was wrong but what we had done to him was also wrong."

It is this statement that Midgett argues should have been suppressed. The trial court found that the time between the initial contact with Midgett around 12:15 a.m. and the 2:30 a.m. meeting at the jail was a reasonable time in which Hicks could have expected Midgett to have sobered. It further found that Midgett understood his rights and that his statement was given voluntarily and spontaneously.

■■ The state has the burden of proving by a preponderance of the evidence that a custodial confession or inculpatory statement was given voluntarily or was knowingly and intelligently made. And while this court makes an independent determination based on the totality of the circumstances, a trial court will not be reversed unless its determination is clearly erroneous. *Hart* v. *State*, 312 Ark. 600, 852 S.W.2d 312 (1993); *Davis* v. *State*, 308 Ark. 481, 825 S.W.2d 584 (1992); *Anderson* v. *State*, 311 Ark. 332, 842 S.W.2d 855 (1992); *McDougald* v. *State*, 295 Ark. 276, 748 S.W.2d 340 (1988). Whether an accused had sufficient mental capacity to waive his constitutional rights, or was too incapacitated due to drugs or alcohol to make an intelligent

waiver is a question of fact for the trial court to resolve. *McDougald*, 295 Ark at 280, 748 S.W.2d at 341. The fact that an appellant might have been intoxicated at the time of his statement, alone, will not invalidate that statement, but will only go to the weight accorded it. *Id.; Davis*, 308 Ark. at 488, 825 S.W.2d at 588.

■ . When the appellant claims intoxication at the time he waives his rights by making a statement, the test for an intelligent waiver is whether the individual had sufficient mental capacity at the time to know what he was saying under the totality of the circumstances. *Id.* at 488-489. Previously, this court has found it significant that the appellant answered questions without indications of physical or mental disabilities, remembered details of the interrogation, and gave the statement within a short period of time after his rights had been read to him. *McDougald*, 295 Ark. at 280.

■ Here, the evidence showed Midgett was informed of his rights both at the scene of the crime and at the jail, Midgett was a convicted felon and knew enough to "plead the fifth", and Deputy Hicks went over the *Miranda* form with Midgett two hours after his capture. Even though he still smelled of alcohol, Midgett was able to acknowledge his understanding of each right, read the waiver statement, and request a court-appointed attorney. Upon Midgett's request for an attorney, Hicks correctly terminated the interview by rising from his chair and turning to leave the room when Midgett initiated further conversation. The fact that Midgett demonstrated concern for what charges would be filed against him is also significant evidence that he understood the situation and had the mental capacity to comprehend the gravity of the consequences. Based on the record before us, the trial court was not clearly erroneous in denying Midgett's motion to suppress.

Midgett next argues that, prior to trial, the state filed an information on him to include two counts of rape by deviate sexual activity pursuant to Ark. Code Ann. § 5-14-103 (Repl. 1993); but following presentation of the evidence, the court allowed the state to amend the information by adding a charge of rape by sexual intercourse against the older child. Midgett contends he was both surprised and prejudiced by the state's amendment and this constituted error.

As long as the amendment does not change the nature or degree of the crime charged and the appellant is not surprised, the state may amend an information at any time prior to submission of the case to the jury. *Kilgore* v. *State*, 313 Ark. 198, 852 S.W.2d 810 (1993). In *Cokeley* v. *State*, 288 Ark. 349, 705 S.W.2d 425 (1986), this court held rape is a single crime with two different methods of commission. Ark. Code Ann. § 5-14-103 (Repl. 1993) provides in relevant part as follows:

> (a) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person:
>
> . . .
>
> (3) Who is less than fourteen (14) years of age.

Deviate sexual activity is described as sexual gratification by penetration, however slight, of the anus or mouth of one person by the penis of another or of the vagina or anus of one person by any body member or foreign instrument manipulated by another; while sexual intercourse is defined as penetration, however slight, of the vagina by a penis. Ark. Code Ann. § 5-14-101(1) and (9); *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984). The penalty for rape is the same whether it is by deviate sexual activity or by sexual intercourse.

At trial, Deputy George Williamson testified that he saw Midgett penetrate the older child:

> When I bent down to look in the window, I saw a naked man standing there and a young girl sitting on a chair with her legs spread out. The man was holding his penis in his hand and ramming it into the girl. I was about 2-3 feet from him that he was attempting to get his penis into the girls (sic) vagina. He had his penis in her vagina and kept ramming it in to her.

While deputies Spencer Moore and Steve Bradley were not able to testify that they saw Midgett actually penetrate the child, they were able to testify that Midgett was naked and kneeling in front of the child who was sitting naked on a chair with her legs spread, and Midgett was making movements and the appearance of sexual intercourse. The older child, herself, testified

that "right before the police got there, Danny tried to put his private part inside mine."

Additionally, the older child testified about an event that occurred earlier that same night when Midgett had her outside the house:

> When I was outside and didn't have any clothes on it was because Danny made me pull them off. He *put his* thing in my private part when he had me take my clothes off.

■      Consistent with the foregoing law and evidence, the trial court was correct in allowing the state to amend the information to conform to the proof and to instruct the jury accordingly since the amendment did not change the nature or degree of the crime. *See Wood* v. *State*, 287 Ark. 203, 697 S.W.2d 884 (1985). Since he was already charged with two counts of rape, Midgett cannot claim surprise due to the amendment.

Midget's next point involves his motions for a directed verdict at the end of the Denno hearing, and again at the close of the state's case. Because Midgett did not present evidence, it was not necessary that he renew his motion after the defense rested. Midgett argues the evidence was insufficient to prove he raped the older child by sexual intercourse and insufficient to prove he raped the younger child by deviate sexual activity.

■      This court views the evidence most favorably to the appellee and the testimony of a rape victim is sufficient to support a conviction. *Prater* v. *State*, 307 Ark. 180, 820 S.W.2d 429 (1991); *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992); *White* v. *State*, 303 Ark. 30, 792 S.W.2d 867 (1990). Further, any inconsistencies in the victim's testimony is for the jury to resolve. *Id.*

The testimony of the older child alone is sufficient to support Midgett's conviction for rape by sexual intercourse. But when her testimony is coupled with the testimonies of the three deputies, the evidence against Midgett overwhelmingly supports his conviction for rape by sexual intercourse.

■      Midgett now argues it was physically impossible for the deputies to view the scene as they testified due to the layout

of the house. However, Midgett failed to abstract any impeaching testimony, or any diagrams or photographs to support his argument. This court has stated numerous times the record on appeal is confined to that which is abstracted, and failure to abstract a critical document or other evidence precludes this court from considering the issues concerning it. *Porchia* v. *State*, 306 Ark. 443, 815 S.W.2d 926 (1991).

Next, the evidence supporting Midgett's conviction for rape by deviate sexual activity of the younger child includes her testimony and testimony of a nurse. Midgett requested that the court strike the younger child's testimony from the record because immediately after the event, she did not tell the officers that Midgett "stuck his hand in my private thing" as she did at trial. The trial court correctly denied Midgett's motion to strike. While Midgett's attorney attempted to impeach the child on cross-examination, she was adamant that she did not remember talking to the officers after the event and that Midgett had penetrated "her private thing" with his hand.

A child who is called to testify is held to the same standard of competency as an adult, and a trial court must begin with the presumption that every person is competent to be a witness. *Holloway* v. *State*, 312 Ark. 306, 849 S.W.2d 473 (1993). The burden of persuasion is upon the party alleging the witness is incompetent by establishing the lack of at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the person can communicate to the factfinder a reasonable statement of what was seen, felt and heard. Further, the competency of a witness is a matter lying within the sound discretion of the trial court, which this court will not reverse on appeal absent clear abuse of that discretion. *Id.*

This court has held a child was competent to testify even when his testimony is not completely clear, and where the child had instances of not remembering and minor conflicts in his testimony. *Id.*; *Warbington* v. *State*, 240 Ark. 1073, 405 S.W.2d 281 (1966). In *Holloway*, 312 Ark. at 314, this court reaffirmed its view that the evaluation of the child by the trial court is par-

ticularly important because of the court's opportunity to observe the child and to assess the child's intelligence and understanding of the need to tell the truth.

Here, the younger child, who was eight years old at the time of trial, indicated her understanding of the need to tell the truth, the meaning of her oath, and the consequences of not telling the truth. The child testified not only about what Midgett did to her, but also about what she saw Midgett do to her sister. Variances in testimony do not warrant a finding of incompetence but are for the jury to resolve. *Holloway* at 316.

Additionally, Cindy Rothe, a licensed practical nurse at Methodist Hospital, testified as to the physical examination of the younger child in the emergency room on the night of the crime.[1] Rothe testified that the child had bruises and welts on her buttocks and small bruises billaterally on her inner thighs. The younger child suffered from erythema of the introitus and labia which Rothe testified indicated irritation and swelling of the vaginal area.

Taken as a whole, the evidence is more than sufficient to support both Midgett's convictions for rape by sexual intercourse and rape by deviate sexual activity.

Finally, Midgett argues the court should have instructed the jury on sexual abuse in the first degree as a lesser included offense and that this instruction was proffered to the court. However, because the record fails to reveal the proffer, and neither the proffer nor the instruction is abstracted, it is not necessary to address the merits of Midgett's argument. Additionally, Midgett argues the trial court erred by refusing to give a theory of the defense instruction which he also failed to proffer.

As this court as stated many times, the failure to proffer an instruction results in a waiver of that issue on appeal. *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993). Simply giving a set of instructions to the trial judge is not sufficient, and places the responsibility on the trial judge of bringing up a record on appeal which rightfully belongs on the appellant. *Id.*

---

[1] It is not clear if this witness was offered as an expert, but if so, the defense did not object.

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record has been reviewed and no other errors appear which were prejudicial to the appellant.

Affirmed.