Allen Eugene DRYMON *v.* STATE of Arkansas

CR 93-1265                                        875 S.W.2d 73

Supreme Court of Arkansas
Opinion delivered May 2, 1994
[Rehearing denied May 31, 1994.]

*Penix & Taylor*, by: *Stephen L. Taylor*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Allen Eugene Drymon appeals his judgment of conviction on four counts of rape involving his two minor stepdaughters, A.J. and H.J. He was sentenced to a total term of 50 years. He now raises four points for reversal: (1) whether the trial court erred by holding a Rape Shield hearing less than three days before trial; (2) whether the trial court abused its discretion by refusing to admit instances of alleged prior sexual conduct of the victims; (3) whether the trial court abused its discretion by refusing to grant a mistrial when defense counsel referred to prior sexual conduct in his opening statement; and (4) whether the trial court abused its discretion by refusing to suppress Drymon's incriminating statement on grounds of intoxication. We affirm the judgment.

Drymon, his wife (Elaine Drymon), her two daughters (H.J. and A.J.), and three other children moved from Missouri to a home near Prairie Grove in 1987. Elaine Drymon was employed at Braum's restaurant and went to work at 3:00 p.m. in the afternoon and worked until midnight. Drymon was employed at Chicken Pullman and went to work at approximately 5:30 p.m., according to several witnesses, although Drymon himself testified that he went to work earlier. In September of 1992, Elaine Drymon was told by her young son that Drymon was abusing her two daughters. She promptly advised the Washington County Sheriff's Office of this. As part of the Department's investigation, Deputy Sheriff Joanne Frieheit took a statement from Drymon in which he incriminated himself. Drymon was then charged with

four (4) counts of rape, consisting of sexual intercourse and deviate sexual activity with his stepdaughters, H.J., who was age 11 at the time Drymon was charged, and A.J., who was age 13 at that time.

On February 10, 1993, Drymon moved to suppress the custodial statement which he gave to Deputy Frieheit and asserted that when the statement was made, he was so intoxicated that he was not capable of knowingly and intelligently waiving his rights against self-incrimination. On March 8, 1993, he filed a motion to determine the admissibility of the victims' prior sexual conduct pursuant to Ark. Code Ann. § 16-42-101 (1987), commonly known as the Rape Shield Statute. The motion alleged that the victims' past conduct was relevant to Drymon's defense and requested that the court schedule a hearing to determine the relevancy of the evidence.

The day before the trial, on May 3, 1993, Drymon asked for a hearing on his two pre-trial motions, and the hearing was commenced late that afternoon and continued on the next day. Deputy Frieheit testified that she observed Drymon in her car during the twenty minute drive from Springdale to the Sheriff's office in Fayetteville on the day he made his statement. She stated that she smelled no alcohol on his breath, that he did not behave as though he were intoxicated, and that his speech was clear and not slurred. She added that upon arriving at the Sheriff's Department, Drymon was advised of his rights and waived them. She produced the waiver-of-rights form signed by him. She then conducted an interview with Drymon which took ten minutes and resulted in the incriminating statement. The interview was taped.

Other testimony at the pre-trial hearing was taken from Deputy Sheriff Charles Rexford, who testified that Drymon showed no signs of intoxication, and from Drymon himself who related that he had been drinking for two days prior to his arrest and had also smoked marijuana. He further stated that his supervisor, Harvey Ward, refused to let him work the day of his statement because he was too intoxicated.

The court next proceeded to hear testimony on Drymon's motion to permit evidence of the victims' prior sexual conduct. Drymon objected to the timing of the hearing on the basis that

the hearing was not conducted three days before trial as the Rape Shield Statute required. The trial court overruled the objection and stated that it did not know about the motion until advised by defense counsel on May 3, 1993. Once it learned of the motion, a hearing was scheduled immediately.

Drymon testified that he had witnessed the victims involved in "sex play" on several occasions. He stated that he saw H.J. masturbate with her fingers and found her in bed one time with her younger brother. He also stated that he witnessed A.J. masturbating with a doll leg and on another occasion with her fingers.

Drymon further imparted that he planned to testify at trial that A.J. had attempted to have sex with him. He stated that this occurred when he was drunk, and when he realized it was A.J. and not his wife, he terminated the activity. He testified that H.J. also initiated sexual contact with him but that it never was consummated. He stated that there was no further sexual contact with the two girls.

Drymon's third example of past sexual conduct was that A.J. had walked in front of him and Robert Williams, a friend, wearing a pair of pants with a hole in the seat which exposed her backside. Finally, he advised the trial court that he planned to have a psychologist, Dr. Bruce Allen, testify at trial that the victims had been "sexualized" by the dysfunctional nature of the family and by exposure to pornography.

The trial court ruled on May 4, 1993, that the motion to suppress Drymon's statement was denied and that the masturbation testimony, the torn-pants testimony, and the evidence by the psychologist of a "sexualized" environment were inadmissible. The trial court made no mention in its ruling of the two incidents where Drymon claimed that the two girls had tried to seduce him when he was intoxicated.

Following a brief recess, the trial court proceeded with jury selection and opening statements. During opening statement, defense counsel stated:

> What I'm about to tell you goes against my nature as a defense attorney. And I want to come in here and tell

you everything is bright and rosy and we're here because of a mistake, but I don't believe that's true. There were potentially two acts of sexual conduct or sexual —well, conduct may be the best word — between Allen Drymon and these two girls. Now, keep in mind —

At this point, the State objected, and a conference was held at the bench. Drymon's counsel explained that he intended to refer to the two times when Drymon found the girls trying to have sex with him when he was drunk and that this evidence had not been excluded by the court under the Rape Shield Statute. The trial court sustained the State's objection, and defense counsel moved for a mistrial. The motion was denied, and though Drymon's counsel did not request it, the trial court admonished the jury:

Ladies and gentlemen of the jury, I'm going to admonish you to disregard the last statement of Mr. Taylor in his opening statement.

Following the trial, the jury found Drymon guilty of all four counts of rape, and he was sentenced to a total term of fifty years.

## I. RAPE SHIELD HEARING

For his first point, Drymon urges that the trial court violated the Rape Shield Statute by not holding a hearing three days before trial. Instead, the hearing was held the day before the trial (May 3, 1993) and the morning of the trial. The relevant subsection of the Rape Shield Statute reads:

(2)(A) A hearing on the motion shall be held in camera no later than three (3) days before the trial is scheduled to begin, or at such later time as the court may for good cause permit.

Ark. Code Ann. § 16-42-101(c)(2)(A) (1987).

Drymon filed his motion to admit evidence of the victims' alleged prior sexual conduct on March 8, 1993. At that time trial was set in April, 1993. A continuance was ordered, and trial was reset for May 4, 1993.

The Rape Shield Statute clearly provides that a hearing *shall* be held on a motion. However, the timing of the hearing is not mandatory and may occur closer to the trial as the court permits

"for good cause." In this instance, the trial court stated that it was unaware of the motion or that Drymon wanted a hearing on it until May 3, 1993. Furthermore, despite Drymon's protest that the ruling was needed in order to adequately prepare for trial, it was his responsibility to pursue the motion and to bring the matter of a hearing to the court's attention. He did not do this until the day before the trial.

We hold that good cause for conducting the hearing within three days of trial clearly existed. In addition, Drymon's claim of prejudice resulting from the timing of the hearing is not convincing for several reasons. For one thing, he received a full hearing on his motion. For another, he was granted the opportunity to present witnesses in support of his motion, and at the close of the hearing, he stated that he had no other witnesses to present. He also failed to request a continuance of the trial to prepare his defense in light of the trial court's adverse rulings on his pre-trial motions. Under these circumstances, we discern no prejudice to Drymon's case.

## II. EXCLUSION OF PROPOSED EVIDENCE UNDER THE RAPE SHIELD STATUTE

Drymon next asserts that the trial court abused its discretion by ruling that certain proposed incidents of prior sexual conduct by the victims were inadmissible.

The admissibility of a victim's prior sexual conduct is determined pursuant to the Rape Shield Statute and is discretionary with the trial court. *Laughlin* v. *State*, 316 Ark. 489, 872 S.W.2d 848 (1994). In evaluating the admissibility of such evidence under the statute, the court must determine whether the probative value of the evidence outweighs its inflammatory nature. *Id.*; *Logan* v. *State*, 300 Ark. 35, 776 S.W.2d 341 (1989). We will not disturb the trial court's decision absent a manifest abuse of discretion. *Id.*

We begin by addressing Drymon's claim that each of the victims initiated sexual contact with him on two separate occasions when he was intoxicated. It is settled law that acts of prior consensual conduct between the victim and the accused are admissible only when consent is at issue. *State* v. *Sheard*, 315 Ark. 710, 870 S.W.2d 212 (1994); *State* v. *Small*, 276 Ark. 26, 631

S.W.2d 616 (1982). Here, the two victims were younger than the age of consent at the time of the alleged conduct; thus, consent patently cannot be a defense in this case. Drymon maintains, however, that he was intoxicated and had no cognizant participation in the two sexual encounters with A.J. and H.J. But this assertion does not resolve the matter in his favor. Voluntary intoxication is not a defense to criminal prosecutions. *Spohn* v. *State*, 310 Ark. 500, 837 S.W.2d 873 (1992); *Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 704 (1992); *Cox* v. *State*, 305 Ark. 244, 808 S.W.2d 306 (1991). Likewise, it is not a defense to having sexual relations with minor children. The trial court ruled correctly that this proffered evidence was irrelevant and of no significance in this case.

■ With regard to individual masturbation by the victims, this is not included within the definition of "sexual conduct" under the Rape Shield Statute. *See* Ark. Code Ann. §§ 16-42-101(a), 5-14-101 (1987). This court, however, has previously reasoned that irrespective of the Rape Shield Statute incidents of individual masturbation by a victim have no relevance when the question at hand is whether a defendant raped that victim. *Logan* v. *State, supra.*

■ Drymon argues that this evidence was intended to demonstrate that the victims had a propensity to initiate sex and to refute the testimony of Dr. Robert Irwin, who testified that the victims' vaginal injuries were caused by some kind of penetration. We view the probative value of this testimony as tenuous at best. Dr. Irwin testified that masturbation with a foreign object would have been painful because of vaginal infection. Moreover, as in the case of prior sexual conduct excluded under the Rape Shield Statute, there is a definite humiliation and embarrassment to the victims associated with such a line of inquiry which is not warranted when the evidentiary value of the evidence is so weak. In light of this, we cannot say that the trial court abused its discretion in denying the masturbation testimony.

■ Lastly, we turn to the incident of the torn pants worn by A.J., and the testimony of the psychologist relating to the girls' exposure to pornography and the effects of a dysfunctional family. We also note that these acts do not constitute sexual con-

duct under the Rape Shield Statute. Ark. Code Ann. §§ 5-14-101 and 16-42-101(a) (1987). Furthermore, such evidence falls far short in probative value and, again, would serve only to humiliate the victims. It was not error to exclude this evidence on grounds of relevance. *Slater* v. *State*, 310 Ark. 73, 832 S.W.2d 846 (1992).

### III. MISTRIAL

For his third argument, Drymon insists that the trial court erred by refusing to declare a mistrial. His argument centers on the comment made by defense counsel in his opening statement that there had potentially been two acts of sexual conduct between Drymon and the two girls. These comments prompted an objection from the prosecution which the trial court sustained. The defense moved for a declaration of a mistrial which the trial court refused. The court, on its own volition, then admonished the jury to disregard defense counsel's statement.

Declaring a mistrial is certainly a drastic remedy, and proper only where the error is beyond repair and cannot be corrected by any curative relief. *Meny* v. *State*, 314 Ark. 158, 861 S.W.2d 303 (1993); *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2d 797 (1992). The trial court has wide discretion in this area, and we will not reverse absent an abuse of discretion or manifest prejudice to the complaining party. *Hall* v. *State*, 314 Ark. 402, 862 S.W.2d 268 (1993).

Drymon makes much of the fact that the trial court did not expressly exclude testimony of sexual conduct initiated by the two victims at the pre-trial hearing. But this argument turns the Rape Shield Statute on its head. It is incumbent upon the defendant under the statute to obtain a written order from the trial court detailing what evidence of prior sexual conduct by the victim may be introduced. Such an order relating to this incident was not obtained. The fact that the trial court was silent on this point following the pretrial hearing offers Drymon no relief. He, accordingly, proceeded to mention the incident in his opening statement at his own risk. We have held that an appellant may not claim reversible error based on his or her error at trial. *Morgan* v. *State*, 308 Ark. 631, 826 S.W.2d 271 (1992); *Terry* v. *State*, 303 Ark. 270, 796 S.W.2d 332 (1990).

But we also do not consider the remark by counsel to have been so irreversible and irredeemable as to warrant stopping the trial. The comment, though significant, was not an admission of guilt and was somewhat vague. An admonishment by the court quickly followed, and at the close of the evidence, the jury was instructed that opening statements were not evidence and that statements which had no basis in evidence should be disregarded. Drymon, of course, took the stand and denied any culpability.

We cannot conclude under these circumstances that the jurors were irrevocably prejudiced by the comment. *See Hall v. State, supra.; Miller v. State,* 309 Ark. 117, 827 S.W.2d 149 (1992); *Neff v. State,* 287 Ark. 88, 696 S.W.2d 736 (1985). The trial court was best positioned to determine the effect of the remark on the jury and concluded that a new trial was not warranted. We find no error in this ruling.

## IV. CUSTODIAL STATEMENT

For his last point, Drymon contends that the trial court erred in refusing to suppress his custodial statement on the basis that he was too intoxicated at the time due to drug and alcohol usage to knowingly and intelligently waive his rights.

When the validity of a custodial statement is challenged, the State has the burden of proving that it was knowingly and intelligently made by a preponderance of the evidence. *McDougald v. State,* 295 Ark. 276, 748 S.W.2d 340 (1988). This court makes an independent determination based on the totality of the circumstances and does not reverse unless the trial court's determination is against the preponderance of the evidence. *Id.; Midgett v. State,* 316 Ark. 553, 873 S.W.2d 165 (1994); *Coleman v. State,* 315 Ark. 610, 869 S.W.2d 713 (1994). Intoxication alone will not invalidate a waiver, but simply goes to the weight accorded it. *Midgett v. State, supra; McDougald v. State, supra.* Whether a defendant made a valid waiver under the conditions is a question of fact for the trial court to resolve. *Id.*

In the instant case, Drymon acknowledged in a duly signed waiver that he understood his rights and had waived those rights. Additionally, Deputy Sheriff Frieheit, who conducted the interview, testified that he showed no signs of intoxication, his answers were clear and responsive, he did not slump or stagger, and he

did not smell of alcohol. Deputy Sheriff Rexford confirmed this based on his observations when he escorted Drymon from the Sheriff's Department to the jail.

There was contradictory testimony from defense witnesses, including Drymon, his supervisor (Harvey Ward), and his grandfather (Columbus McGarrah) that he was severely intoxicated. Drymon in particular testified that he had suffered a blackout at the time of his statement due to intoxication. We note, however, that such conflicts in testimony are for the trial court to resolve by evaluating the credibility of each witness. *Coleman* v. *State, supra.* In this instance, the trial court gave more credence to the testimony of the two deputy sheriffs, both of whom testified to considerable personal and professional experience in recognizing when a person is intoxicated. The testimony of the deputy sheriffs, the fact that Drymon signed a waiver-of-rights form, and the clarity of his statement combine to convince us that the trial court's ruling to admit Drymon's statement was supported by a preponderance of the evidence.

Affirmed.