David Lee WILLIAMS *v.* STATE of Arkansas

CA CR 96-198                                    940 S.W.2d 500

Court of Appeals of Arkansas
Division III
Opinion delivered March 12, 1997

*Tim Buckley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

SAM BIRD, Judge. David Lee Williams was convicted following a jury trial of the crime of murder in the second degree in connection with the shooting death of Debra Barnes at his Fayetteville, Arkansas, apartment on October 21, 1994. Appellant now contends that the trial court erred in denying his motion for directed verdict that was premised on his claim that the evidence was insufficient to show that he acted with a culpable mental state. Appellant also contends that the trial court erred when it denied his motion to suppress the statements that he made to the police during the course of custodial interrogations. We hold that appellant's challenge to the sufficiency of the evidence was not preserved for appellate review because he failed to renew his motion for directed verdict after the prosecution presented rebuttal evidence, pursuant to Rule 33.1 of the Arkansas Rules of Criminal

Procedure. We also hold that the trial court did not err when it denied his motion to suppress the custodial statements because appellant agreed to talk to the police before any deceptive police conduct occurred, and because the trial court's ruling that appellant knowingly and intelligently waived his right to remain silent was not clearly erroneous. Therefore, we affirm.

Debra Barnes died from loss of blood due to wounds inflicted by a bullet that, according to the testimony of an associate medical examiner during the trial, was fired from a black-powder pistol. That bullet first struck her leg, entered the left side of her body, and then exited the mid-breast area of her body. Appellant lived in the apartment where Barnes was shot, and he was arrested by the police shortly after they arrived at the shooting scene. Appellant claimed that the pistol fell from a piece of furniture and either struck the floor and discharged or discharged when he tried to grab it after it fell. However, he was charged with murder in the first degree, found guilty of murder in the second degree, and sentenced to twenty years imprisonment.

Appellant first challenges the sufficiency of the evidence to support his conviction and alleges that he lacked a culpable mental state because he had been drinking alcohol and taking Valium before the shooting. He moved for a directed verdict at the close of the State's case and renewed his motion for directed verdict at the close of his defense. Both motions were denied, and the State presented rebuttal evidence. Appellant failed to renew his motion for directed verdict after the State presented rebuttal.

■ Appellant's failure to renew his motion for directed verdict after the State presented rebuttal evidence constituted a waiver of his challenge to the sufficiency of the evidence. Rule 33.1 of the Arkansas Rules of Criminal Procedure (formerly Rule 36.21) expressly requires renewal of a directed verdict motion after rebuttal evidence has been presented, and the rule is strictly interpreted. *Christian v. State*, 318 Ark. 813, 889 S.W.2d 717 (1994); *Bradley v. State*, 41 Ark. App. 205, 849 S.W.2d 8 (1993). Consequently, appellant's challenge to the sufficiency of the evidence regarding his mental state was not preserved for appellate review.

Appellant also contends that the trial court erred by denying his motion to suppress the custodial statements that he made during several interrogations by the police, arguing that police deception rendered his statements involuntary. Officer David Corley testified that after appellant was arrested and placed in his patrol car, at approximately 5:00 a.m. on October 21, 1994, he informed appellant about his right to remain silent, right to speak with an attorney before and during any questioning, and right to stop answering questions at any time after he decided to answer. Two hours later, Detective Larry Norman of the Fayetteville Police Department interviewed appellant at the police department. Norman testified that he read appellant his rights, and that appellant signed a waiver-of-rights form before Norman conducted a tape-recorded interview. According to Norman's testimony during the hearing on appellant's motion to suppress his custodial statements, appellant was responsive to questions during the interview.

Detective Tracey Risley testified at the suppression hearing that he began interviewing appellant at approximately 9:20 a.m. on October 21, 1994, after Norman had already interviewed him for two hours. Risley did not have appellant sign another rights form, but testified that he reviewed the rights form that Norman had already covered. Risley testified that appellant agreed to talk and gave "a somewhat detailed statement" during that interview and indicated that he understood his rights. Risley also testified that appellant specifically asked about the welfare of the shooting victim. Although Risley knew that the victim had died, he testified that he told appellant that he did not know her welfare. Risley testified that he did so out of concern that appellant would have immediately stopped the interview if he learned that the victim had died, and Risley described his deception as "just one of my investigative techniques." Appellant was only informed of the victim's death after Risley interviewed him.

Detective Norman conducted a third interview at 4:34 p.m. on October 21, 1994, and appellant executed a second rights form in connection with that interview. Norman told appellant that there were discrepancies between his previous statements and the physical evidence, and appellant requested an attorney during that interview.

■ Appellant contends that his Fifth Amendment right to be free from self-incrimination was violated when the police intentionally gave him false information in response to his repeated inquiries concerning the welfare of the shooting victim. His contention requires that we decide whether he made a free choice, uncoerced by the police, to waive his Fifth Amendment right to be free from self-incrimination; if so, we must also determine whether appellant's waiver of his right to be free from self-incrimination was made intelligently and knowingly. *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993). On appeal, an independent determination about the validity of custodial statements is made based on the totality of the circumstances, and there is no reversal unless the trial court's determination is against the preponderance of the evidence. Whether a defendant made a valid waiver under the circumstances is a question of fact for the trial court to resolve. *Drymon v. State*, 316 Ark. 799, 875 S.W.2d 73 (1994).

■ Although appellant does not claim that his custodial statements resulted from intimidation or coercion by the police, he alleges that the police practiced deception by deliberately withholding information from him concerning the victim's welfare, and by consciously misrepresenting that they did not know her status when, in fact, they knew that she had died. However, appellant had already been advised of his rights, had agreed to talk with the police, and had signed a waiver-of-rights from before the police lied to him about the victim's welfare. When appellant agreed to talk with the police, he had already been told that the police could and would use anything that he said against him. Under the totality-of-the-evidence standard of review applied to challenges to trial court decisions that deny motions to suppress custodial statements, we hold that the trial judge's denial of appellant's suppression motion based on a finding that the statements were made voluntarily was not against the preponderance of the evidence.

Appellant also argues that the trial court erred when it held that he knowingly and intelligently waived his Fifth Amendment right to be free from self-incrimination. This argument is based on appellant's claim that he lacked full awareness of the nature of

that right, and because he was allegedly intoxicated due to having consumed alcohol and taken Valium. Appellant maintains that he was impaired on account of that intoxication when the police arrested him, when they spoke with him about his rights, and when they interrogated him.

■ However, Officer Corley, Detective Norman, and Detective Risley testified that appellant appeared to understand what was said to him and did not slur his speech. Appellant signed two rights forms in which he indicated that he understood his rights and did not request an attorney until Norman told him that there were discrepancies between his custodial statements and the physical evidence. Although there was proof that appellant smelled of intoxicants and had bloodshot eyes when he was arrested and when Corley interviewed him, it was the trial court's function to weigh the conflicting evidence, resolve credibility questions, and decide whether appellant made a knowing and intelligent waiver of his rights. Based on our review of the record under the totality-of-the-evidence standard, we hold that the trial court's decision on this question was not clearly erroneous.

Affirmed.

JENNINGS, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I write separately to emphasize that our decision to affirm the trial court's ruling on appellant's suppression motion does not obligate us to condone the deceptive practices that Detective Risley casually termed "just one of my investigative techniques." The police have no greater justification for lying than anybody else. They owe a duty to society to be truthful and honest, especially when gathering and processing information that society will use in deciding whether to prosecute a person for criminal conduct. The criminal justice system is not served if deceit is the standard operating practice of the agency trusted to ferret out crime and present evidence of criminal activity at trials.

Our system of adversarial justice is built on the belief that the truthfulness of evidence is integrally related to the trustworthiness of the process by which evidence is obtained. As long as we con-

tinue to apply the "totality-of-the-circumstances" standard in reviewing trial court denials of motions to suppress evidence, judges must consider the trustworthiness of the evidence presented by the police and the circumstances related to the evidence. Currently, the law requires that in order for a defendant's incriminating statement to be declared involuntary due to police deception, the statement must be induced by the deceit. This, however, does not mean that police falsehoods within the context of custodial interrogations are otherwise meaningless.

Law enforcement agencies and the investigators who present testimony in criminal proceedings must realize that a reputation for distorting the truth, hiding the truth, and deliberately falsifying information gained from a criminal investigation and interrogation lowers public confidence in the integrity of the police and heightens distrust in the evidence they present. If lying to suspects is a common investigative practice of the Fayetteville Police Department or one of its detectives, then that practice and policy of deliberate deception is a factor that trial courts should consider. This is especially true when weighing the credibility of police witnesses on a wide variety of issues including whether the police have reasonable suspicion for making investigatory stops; whether they have actually informed persons of their right to remain silent, obtain counsel, and halt questioning; as well as whether the police have been truthful concerning the handling of physical evidence. Also, appellate judges ought to consider evidence of police deceit along with the rest of the circumstances when we review trial court decisions to deny motions to suppress evidence. Otherwise, the police will have a "free-lie zone" within which they may conduct interrogations in the hope of obtaining incriminating information.

Some may view my concern for police integrity and my disdain for police deceit during criminal investigations out of place; however, the impact of the revelations concerning Detective Mark Fuhrman of the Los Angeles Police Department during the criminal trial of O.J. Simpson proves my point. In this case, Detective Risley appears to believe that lying to suspects during the course of custodial interrogations is both appropriate and worthwhile. He acknowledged that he lied to appellant about the victim's welfare out of concern that appellant would exercise his constitutional

right to remain silent if he knew that the victim had died, as if appellant's freedom to remain silent under the Fifth Amendment somehow justified lying. Risley termed lying to suspects "one of my investigative techniques," thereby admitting that it is part of his investigative protocol. If Risley and the Fayetteville Police Department consider lying an acceptable investigative technique to produce incriminating information upon which to base charges, is there any reason to believe that they are truthful in other aspects of criminal investigation? Is Risley more likely to be truthful when testifying during trials based on the evidence he claims to have uncovered than he would be in investigating leads?

If the police want trial and appellate judges to trust their integrity and honesty when they testify about the voluntariness of custodial interrogations, then they must be truthful in their dealings with suspects and respect their constitutional rights during custodial interrogations. If they insist on lying as standard operating procedure, trial and appellate courts must consider that propensity when performing the judicial functions of weighing credibility and assessing the circumstances surrounding the voluntariness of custodial statements.

The virtue of our criminal justice system results from our conviction that dedication to truth does not require us to devalue fundamental liberties such as the freedom to remain silent. If we belittle that value, criminal prosecutions will deteriorate to mere legal games decided by the side most successful in deceit, rather than determinations about whether the proof that the prosecution offers on criminal charges is true.