Riley Dobi NOEL *v.* STATE of Arkansas

CR 97-117 960 S.W.2d 439

Supreme Court of Arkansas
Opinion delivered January 15, 1998
[Petition for rehearing denied February 19, 1998.]

*Wallace, Hamner & Hendry*, by: *Phillip M. Hendry*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Riley Dobi Noel was convicted of three counts of capital murder and one count of attempted capital murder following an eleven-day trial. He was sentenced to death on the capital murder convictions and to sixty years on the attempted capital murder conviction. The killings occurred in Little Rock at the home of the victims' mother, Mary Hussian, on the evening of June 4, 1995. Her three children (Malak Hussian, age 10; Mustafa Hussian, age 12; and Marcel Young, age 17) were shot by Noel in the head as they lay on the floor in the front room of her house. The attempted capital murder was committed against Mary Hussian herself, also in her house. The murders were apparently in retaliation for the assumed involvement of one of Hussian's daughters in the murder of Noel's brother. Noel appeals the judgment on five grounds. We hold that no reversible error occurred at his trial, and we affirm.

## I. Change of Venue

Noel first contends that the trial court was in error in refusing to change the venue of his trial. He attached two affidavits to his motion in which the affiants averred that they did not believe Noel could receive a fair trial in Pulaski County due to the excessive publicity caused by the television and newspaper coverage. In considering motions before the trial began, the trial court denied the motion for a venue change and found that the pretrial publicity had not been excessive. The court further observed that some of the publicity had been caused by Noel's escape from the county jail. The court did state that it would consider the motion again at a later time, if that became necessary. Noel failed to renew his motion at any point in the subsequent proceedings.

The standard of review for denial of a motion for change of venue is whether there was an abuse of discretion by the trial court. *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996).

Using this standard, we turn to the two affidavits submitted to the trial court in support of the motion. State law provides for the removal of a criminal cause to another county when the minds of the inhabitants of the original county "are so prejudiced against the defendant that a fair and impartial trial cannot be had in that county." Ark. Code Ann. § 16-88-201 (1987). In the instant case, the two affidavits submitted state that conclusion. Nevertheless, this court has clearly held that "affidavits that cite little or nothing beyond an affiant's own convictions that a fair trial is not possible are insufficient." *Bell v. State*, 324 Ark. at 263, 920 S.W.2d at 823, *citing Bussard v. State*, 300 Ark. 174, 778 S.W.2d 213 (1989). Under the *Bell* test, the affidavits are deficient.

■ Furthermore, this court has held that a denial of a change of venue motion will not be reversed "if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court." *Bell v. State*, 324 Ark. at 264, 920 S.W.2d at 824. *See also Rankin v. State*, 329 Ark. 374, 948 S.W.2d 397 (1997). All of the jurors in the instant case pledged that they could decide the case based solely on the evidence.

■ Finally, Noel claims that a high percentage of prospective jurors were successfully challenged for cause due to the publicity surrounding the murders and that this fact evidenced the insidious persuasiveness of the adverse publicity. Noel, however, failed to raise this argument to the trial court, and we will not address it for the first time on appeal. *Robinson v. State*, 317 Ark. 407, 878 S.W.2d 405 (1994).

■ We conclude that there was no abuse of discretion by the trial court in its ruling denying the change-of-venue motion.

## II. Noel's Character and Cumulative Error

Noel next claims that the trial court erred in failing to grant his various motions for a mistrial based on the prosecutor's injection of his bad character into the trial. There were five instances of this, according to Noel.

First, upon being shown a picture of Noel by the prosecutor, the victims' mother, Mary Hussian, testified that Noel looked more like "an animal" on the night of the murders. The trial court did not rule on Noel's objection to this testimony but denied his motion for mistrial. Second, when asked why she forged a prescription for medication, Mary Hussian replied that she did so because she had heard that Noel "was out" after being arrested for the murder of her children.[1] The trial court again denied the mistrial motion and concluded that the jury could just as easily have determined that Noel was "out" on bail. Third, when asked why he had lied in his original statement, Curtis Cochran, a co-defendant, replied that he was afraid of Noel because he knew about his "reputation" and was trying to protect him. Defense counsel's objection was sustained, but the motion for a mistrial was denied. Fourth, the prosecutor asked Curtis Cochran whether he knew that Noel had taken the murder weapon from his house on the day of the killings, which was a fact not then in evidence. The objection was sustained, the motion for a mistrial was denied, and the trial court admonished the jury to disregard that question. Fifth, during cross-examination, the prosecutor began to question Noel "if Terry Carroll's grand-mother says you were over there looking for him . . . ," which was a fact not in evidence. Terry Carroll was also a co-defendant. The trial court sustained the objection and denied the motion for a mistrial.

The cumulative effect of this character evidence, according to Noel, violated Ark. R. Evid. 404(a) and tainted his trial. The State counters in its brief on appeal that Noel's cumulative error objection was not preserved for appeal. We have held that in order to preserve a cumulative error objection for appeal, defense counsel must not only object to each instance of error but also clearly present the cumulative error point to the trial court and obtain a ruling. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997); *Witherspoon v. State*, 319 Ark. 313, 891 S.W.2d 371 (1995).

---

[1] Noel did indeed escape from custody subsequent to his arrest for the three murders.

In addressing this issue, we first note that Noel moved for a mistrial on each of the five claims of prejudicial error and obtained a ruling. He further moved for a directed verdict on the cumulative effect of the errors at the end of the State's case after four of the instances had occurred, and the motion was denied. He renewed his cumulative error motion for a directed verdict at the close of all of the evidence. It, too, was denied. Thus, we conclude that the cumulative error issue was preserved for our review.

■ Turning then to the merits, we have stated that a reversal of a conviction based on cumulative error is only appropriate in "rare and egregious" cases. *Vick v. State*, 314 Ark. 618, 863 S.W.2d 820 (1993); *Dillon v. State,* 311 Ark. 529, 844 S.W.2d 944 (1993). An analysis of the five instances complained of in the instant case illustrates that neither individually nor collectively do they rise to the level of reversible error.

First, Mary Hussian's testimony that Noel looked like "an animal" on the night of the murders is not a representation of his character and was not objected to on that basis. The trial court properly denied the motion for mistrial, and defense counsel did not request an admonishment. Second, Hussian's statement that she forged a prescription because she had heard that Noel "was out" was made during defense counsel's cross-examination and was not objected to on grounds of improper character evidence. The trial court correctly denied the mistrial motion because the jury could just as easily have concluded that Noel was "out" on bail, and, again, defense counsel did not ask for an admonishment. Third, Curtis Cochran's statement that he was afraid of Noel because he knew about his "reputation" may well have reflected on Noel's character. Yet, defense counsel's objection was sustained, and the motion for a mistrial was denied. There was no request that the jury be admonished on this questioning. The fourth and fifth instances both dealt with the State's asking questions that assumed facts not then in evidence. On neither occasion did Noel object on the basis of improper character evidence. Additionally, on both occasions, the trial court admonished the jury to disregard the facts not in evidence, and Noel did not object to the form or substance of the admonishment.

■ In short, there was only one objection made that conceivably might have qualified as improper character evidence, and that related to Curtis Cochran's fear due to Noel's "reputation." However, in that instance, the trial court sustained defense counsel's objection, and no request that the jury be admonished in any form or fashion was made by Noel. We cannot say that this circumstance, standing alone, constituted reversible error or that the conduct of the prosecutor *in toto* was so egregious as to deny Noel a fair trial. *See Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995); *Dillon v. State, supra.* Nor does the fact that this is a death case require us to lower this standard, as Noel contends.

There was no abuse of discretion by the trial court on this point.

### III. *Prosecutor's Shifting of Burden of Proof*

For his third point, Noel urges that the trial court should have declared a mistrial based on the prosecutor's comments in closing argument that had the effect of shifting the burden of proof to the defense. Noel contends that there were three such instances.

■ ■ A mistrial is an extreme remedy that should only be used when the error is beyond repair by any curative measure. *Bullock v. State*, 317 Ark. 204, 876 S.W.2d 579 (1994); *Drymon v. State*, 316 Ark. 799, 875 S.W.2d 73 (1994). The trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of it. *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996); *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Lee v. State, supra.* Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Bullock v. State, supra.*

The first remark questioned by Noel occurred during the prosecutor's closing argument in the guilt phase. Noel had taken the stand earlier and testified that he was not present when the murders took place. He gave the names of several alibi witnesses, including his wife, whom he stated was in the courtroom. None

of these witnesses had taken the stand. During closing argument, the prosecutor asked the jury to consider Noel's credibility in light of his alibi witnesses who did not testify. Defense counsel objected and moved for a mistrial. The trial court sustained the objection but denied the motion for mistrial. Noel did not ask that the jury be admonished to disregard that statement.

We have dealt with similar issues in the cases of *Bullock v. State, supra,* and *Cook v. State,* 316 Ark. 384, 872 S.W.2d 72 (1994). In *Bullock,* this court affirmed the trial court's denial of a motion for a mistrial when the State argued that the defense had failed to provide a copy of a check that would corroborate the defendant's alibi that he was working at the time. We held:

> The trial court did not abuse its discretion in denying appellant's request for a mistrial. The prosecutor's remarks were not a comment on appellant's failure to testify or to produce evidence, but an attempt to reiterate the attack on the credibility of appellant's testimony. Such a review of the evidence is not prohibited given that appellant took the stand and offered the alibi testimony. Appellant cannot testify on his own behalf and then expect the Fifth Amendment to prohibit the state from questioning the credibility of his testimony or from calling the lack of credibility to the jury's attention during closing argument.

*Bullock,* 317 Ark. at 206, 876 S.W.2d at 580-81.

In *Cook v. State, supra,* this court upheld the trial court's denial of a motion for a mistrial when the prosecutor argued that defense counsel had failed to call an additional alibi witness that would corroborate the testimony of another alibi witness. The trial court denied defense counsel's motion for a mistrial but admonished the jury. This Court held that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial because:

> [T]he comment was not about the accused's failure to testify in violation of his Fifth Amendment privilege against self-incrimination. Rather, it was about the trustworthiness of a witness's recollection of a date and her confirmation about that date. At most, it was an attempt to shift the burden of proof, and we cannot say that the trial court erred in determining that the instruction remedied that wrong.

*Cook v. State*, 316 Ark. at 387, 872 S.W.2d at 73-74.

 This case is no different from *Bullock v. State, supra,* or *Cook v. State, supra,* in that it was the actions of defense counsel and Noel himself that put his credibility in issue. It was a fair inference to be argued to the jury that the failure of Noel to call any alibi witness to the stand undermined his credibility. Any prejudice resulting from the prosecutor's allusion to absent testimony could have been easily cured by an admonishment, which defense counsel did not request. *Cook v. State, supra.*

The second instance of an alleged prejudicial comment occurred during the State's rebuttal argument in the guilt phase. It concerned photo spreads used by the Little Rock police officers to identify Noel. In defense counsel's closing argument, he posited the question of why the prosecutor had not introduced into evidence the photo spreads used to identify Noel. In rebuttal argument, the prosecutor parried with the argument that defense counsel had access to the photo spreads and could just as easily have cross-examined the State's witnesses about them. The prosecutor further hinted that defense counsel did not do so because he would not have liked the response. Defense counsel objected and argued that the State was again trying to shift the burden of proof. The trial court sustained the objection, denied a motion for a mistrial, and admonished the jury to disregard the prosecutor's argument.

 This court has held that the trial court is given broad discretion in controlling counsel in closing arguments, and we will not disturb the trial court's decision absent a manifest abuse of discretion. *See, e.g., Lee v. State, supra.* Remarks that are so prejudicial as to mandate a reversal are rare and require an appeal to the jurors' passions. *Id.* In addition, this court has recognized that when one party uses improper closing remarks, the other party may respond with what would ordinarily be improper remarks. *See Calloway v. State,* 330 Ark. 143, 953 S.W.2d 571 (1997); *Larimore v. State,* 317 Ark. 111, 977 S.W.2d. 570 (1994); *McFadden v. State,* 290 Ark. 177, 717 S.W.2d. 812 (1986).

Here, the argument presented by the prosecutor was the same as that presented by the defense. But even assuming that the pros-

ecutor's argument was not appropriate, any prejudice was cured by the trial court's admonishment. Although Noel now claims that the admonishment was vague and ineffective, he did not object to the manner of the admonishment at trial. The issue of the effectiveness of the admonishment, accordingly, is not preserved for our review.

■ Finally, during the prosecutor's closing argument at the end of the penalty phase, he referred to Noel as a "psychopath." Defense counsel objected, but not on grounds that this comment shifted the burden of proof. Nor did defense counsel move for a mistrial or object to the trial court's subsequent admonishment of the jury, which he requested. This point also is not preserved for appeal. Moreover, Noel cannot now complain when he obtained the relief requested. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

■ The three incidents cited by Noel could all have been cured by an admonishment to the jury, if, in fact, they were inappropriate in any respect. The jury was admonished in two instances, and an admonishment was not requested in the third case. Noel did not object to the substance or effectiveness of the admonishments given. We affirm the trial court's ruling in each respect.

## IV. *Victim-Impact Evidence*

For his fourth point, Noel appears to make two separate arguments. First, he claims that the statute permitting the use of victim-impact evidence, [Ark. Code Ann. § 5-4-602(4) (Repl. 1993)], deprived him of due process of law because it improperly created a new aggravating circumstance. He next argues that this new aggravating circumstance denied him due process protection because it was considered by the jury outside of the statutory weighing process required for aggravating and mitigating circumstances, all of which contravenes Ark. Code Ann. § 5-4-603 (Repl. 1993). Noel's due process claim that victim-impact evidence under the statute created a new aggravating circumstance was not argued to the trial court and, thus, is not preserved for our review. We turn then to his argument that the victim-impact evi-

dence presented was outside of the statutory weighing process for aggravating and mitigating circumstances.

▇▇▇▇ In 1992, the United States Supreme Court held that the states could determine that victim-impact evidence was relevant to the assessment of punishment in capital murder cases as a means of counteracting mitigating evidence and of showing that the victim's death represented a unique loss to society. *Payne v. Tennessee*, 501 U.S. 808 (1992). In the wake of the *Payne* decision, the Arkansas General Assembly enacted Act 1089 of 1993, now codified at § 5-4-602(4) (Repl. 1993). Section 2 of that Act provides:

> It is the express intention of this act to permit the prosecution to introduce victim impact evidence as permitted by the United States Supreme Court in *Payne v. Tennessee* . . . .

Act 1089 stated that during the penalty phase, in addition to aggravating and mitigating circumstances, the jury may be presented with "any other matter relevant to punishment, including, but not limited to, victim impact evidence . . . ." Ark. Code Ann. § 5-4-602(4). Thus, the General Assembly clearly expressed the policy of this State that victim-impact evidence is relevant to the decision of what punishment is appropriate.

▇▇▇▇ Our subsequent caselaw specifically rejected the notion that victim-impact evidence was an aggravating circumstance or that it violated the statutory weighing process set out in Ark. Code Ann. §§ 5-4-603 through 605 (Repl. 1993). We stated in 1995:

> But by expanding the scope of permissible evidence [victim-impact evidence] during the penalty phase, the General Assembly has not expanded the scope of punishment or added a new aggravating circumstance.

*Nooner v. State*, 322 Ark. 87, 109, 907 S.W.2d 677, 689 (1995), *cert. denied*, 116 S. Ct. 1436 (1995).

In a later case, we expressly addressed the issue of whether "because there is no place in the Arkansas statutory weighing process for the jury to consider victim-impact evidence, our victim-impact statute is violative of the Eighth and Fourteenth Amendments to the United States Constitution and Ark. Const. art. 2,

§ 9." *Kemp v. State*, 324 Ark. 178, 204, 919 S.W.2d 943, 956 (1996), *cert. denied*, 117 S. Ct. 436 (1996). In *Kemp*, we further observed that the appellant's argument was that the victim-impact statute conflicted with the statutes establishing aggravating and mitigating circumstances. We rejected Kemp's argument and held that the victim-impact evidence involved, which consisted of testimony by the sisters and a daughter of the victim, was not unduly prejudicial.

More recently, in *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997), we again addressed the appellant's argument that there was no place in the statutory weighing process for the jury to consider victim-impact evidence. We held in *Lee* that the issue was decided by the *Nooner* and *Kemp* decisions and stated:

> Recognizing that there are virtually no limits placed on the relevant mitigating evidence that a defendant may introduce on his behalf, we noted that the State could legitimately conclude that the impact of the murder on the victim's family is *relevant* to the jury's decision as to whether to recommend that the death sentence be imposed. *Kemp*, 324 at 205, *citing Payne*, 501 U.S. at 827.

*Lee*, 327 Ark. at 703, 942 S.W.2d at 256 (emphasis added). *See also Payne v. Tennessee, supra.*

In the instant case, the defense called Valery Ussery, Noel's mother, to the stand during the penalty phase. She testified that Noel was not disrespectful and had "a kind heart." She also identified three photographs of Noel as a child, which were offered into evidence and which were clearly an effort to emphasize the loss that would be associated with his execution. In our judgment, that is precisely the type of mitigating testimony that the Supreme Court acknowledged could be offset by testimony relating to the human toll of a murder on the victim's family. *See Payne v. Tennessee, supra.* Indeed, the Court in *Payne* said as much when it explained that the states may now allow "the prosecutor to similarly argue to the jury the human cost of the crime." *Payne*, 501 U.S. at 827.

At issue in this appeal is the testimony of Mary Hussian on the impact the murders of her three children has had on her. She

testified generally about her grief and revealed that the "last words" of one of her children were, "Please don't hurt my mom." She also expressed her regret for the fact that her family would "never see the fruit" that her children "were capable of bringing forth to this society." Ms. Hussian added that she was "withdrawn" from her family, that she often has sleepless nights and awakes "in sweat and tears, crying and in emotional pain," and that she initially dealt with her grief by consuming alcohol and abusing her medication. She further revealed that she is in counseling and that she has been hospitalized for "stress related disorders." She stated that she has experienced problems in her employment due to depression and stated that she sometimes "check[s] the children's bedrooms although they're not there." Finally, she read a poem to the jury titled "Wishes from the Heart" that she had written about her children and that she "used as a tool to suppress the hurt and pain because sometimes it is so overwhelming . . . ." According to Ms. Hussian, her family has been "totally destroyed" by the loss of her three children.

We hold, once again, that victim-impact evidence is not an additional aggravating circumstance but rather is relevant evidence which informs the jury of the toll the murder has taken on the victim's family. Such evidence has been sanctioned by the Supreme Court as relevant in *Payne v. Tennessee, supra*, and specifically by the Arkansas General Assembly in Act 1089. As a safeguard against excessive victim-impact evidence, the Court observed in *Payne v. Tennessee, supra,* that when such evidence is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause provides a mechanism for relief. That is not the situation in the instant case. Rather, the State sought to show the human cost of the murders on Mary Hussian, much the same as the defense sought to show, in mitigation, the human toll on Noel's mother in the event of a State execution.

There is one final point. We view the case of *State v. Gusek*, 906 P.2d 272 (Or. 1995), which is cited by Noel, as inapposite. In *Gusek*, the people of Oregon, by initiated Act, voted in a victim-impact law which did not speak directly to the relevancy of victim-impact evidence and which the Oregon Supreme Court held to be at odds with the General Assembly's statutory scheme.

In contrast, the Arkansas General Assembly has enacted the victim-impact law at issue in the instant case and has specifically stated that it *is relevant* to the sentencing process. The dissent cites *Commonwealth v. Fisher*, 681 A.2d 130 (Pa. 1996); *Lambert v. State*, 675 N.E.2d 1060 (Ind. 1996); *State v. Carter*, 888 P.2d 629 (Utah 1995); *Bivins v. State*, 642 N.E.2d 928 (Ind. 1994), in support of its position that victim-impact evidence is irrelevant to the statutory scheme. But, again, the crucial distinction between those cases adduced and the case at hand is that our General Assembly has enacted legislation stating that such evidence is relevant.

The trial court did not abuse its discretion in allowing this testimony.

### V. Mandatory Death Sentence

For his final point, Noel contends that the Arkansas death penalty statute is unconstitutional because it results in a mandatory death sentence. This court has addressed and rejected this precise argument on several occasions. *See, e.g., Jackson v. State*, 330 Ark. 126, 954 S.W.2d 894 (1997); *Nooner v. State, supra.* In those cases, we noted that our statutory scheme provides that a jury may impose the death sentence when the "[a]ggravating circumstances *justify* a sentence of death beyond a reasonable doubt." Ark. Code Ann. § 5-4-603(a)(3) (Repl. 1993) (emphasis added). Thus, justification is an essential element for the imposition of a death sentence.

More specifically, Noel argues that a jury should be instructed that it may show mercy after considering all of the mitigating circumstances. We initially observe that defense counsel did not offer a "mercy" instruction to the trial court. In addition, he did not obtain a ruling from the trial court on this issue. We will not consider the issue for the first time on appeal. *See Watson v. State*, 329 Ark. 511, 951 S.W.2d 304 (1997). Nor do we view this issue as one involving an error in a matter essential to the jury's consideration of the death penalty itself. *See Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997); *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). In any event, we resolved this issue against Noel's position in *Cox v. State* , 313 Ark. 184, 853

S.W.2d 266 (1993), and *Ruiz v. State*, 299 Ark. 144, 772 S.W.2d 297 (1989).

■ Finally, we do not agree with Noel's contention that our statutory scheme precludes a juror from considering a mitigating circumstance unless it is unanimously found. The sentencing forms completed by the jury in this case specifically allow for *some* jurors to weigh a mitigating circumstance while others may not. In *Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341 (1990), this court expressly acknowledged that fact.

■ The trial court, accordingly, correctly ruled that our sentencing statute, Ark. Code Ann. § 5-4-603 (Repl. 1993), was constitutional.

## VI. Rule 4-3 (h) Review

The record has been reviewed for other reversible error pursuant to Ark. S. Ct. R. 4-3(h), and none has been found.

Affirmed.

NEWBERN, IMBER, and THORNTON, JJ., concur in part; dissent in part.

DAVID NEWBERN, Justice, concurring in part; dissenting in part. In various oral and written motions filed prior to trial, Mr. Noel sought to exclude or limit the admission of victim-impact evidence during the sentencing phase of his trial. He argued that the sentencing phase is devoted only to the weighing of aggravating and mitigating circumstances and that victim-impact evidence has no bearing on these issues and thus "falls outside the mandate of the weighing scheme." The Trial Court denied some of the motions relating to victim-impact evidence and ruled that others were moot. Mr. Noel renewed his objection to the use of victim-impact evidence during the trial, and the objection was overruled.

The essence of Mr. Noel's argument to the Trial Court, and to this Court, is that victim-impact evidence should not be admissible in a capital-sentencing proceeding if it is irrelevant to any of the issues that are properly before the jury in that part of the trial.

Mr. Noel's argument has merit. Under our death-penalty statutes, the only issues that are before the jury during the sentencing phase are (1) whether aggravating circumstances exist beyond a reasonable doubt; (2) whether aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and (3) whether aggravating circumstances justify a sentence of death beyond a reasonable doubt. Ark. Code Ann. § 5-4-603 (Repl. 1997). Thus, considering that "the evidence offered must be probative of some issue to be properly considered in the penalty phase," *Hendrickson v. State*, 285 Ark. 462, 466, 688 S.W.2d 295, 298 (1985), it follows that, for evidence to be admissible during the penalty phase of a capital case, it should be directly relevant to the questions posed by Ark. Code Ann. § 5-4-603 (Repl. 1997). *See Lee v. State*, 327 Ark. 692, 706-15, 942 S.W.2d 231, 238-43 (1997)(Newbern, J., concurring). Ms. Hussian's testimony was irrelevant to the issues that were before the jury during Mr. Noel's sentencing phase, and thus it should have been excluded.

In *Payne v. Tennessee*, 501 U.S. 808 (1991), it was held that the Eighth Amendment does not prohibit the admission of certain forms of victim-impact evidence during a capital-sentencing proceeding. The Court observed that the states "may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* at 827. However, as Justice O'Connor observed in a concurring opinion, the Court in *Payne* did not hold "that victim impact evidence *must* be admitted, or even that it *should* be admitted." *Id.* at 831 (O'Connor, J., joined by White and Kennedy, JJ., concurring)(emphasis added). The *Payne* decision simply removed the *per se* bar that prior cases had imposed, under the Eighth Amendment, on the admission of victim-impact evidence and left it to the states to decide for themselves, subject to the constraints of the Due Process Clause, whether and how to use victim-impact evidence in death-penalty cases.

In *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), we were concerned with whether Ark. Code Ann. § 5-4-602(4) (Repl. 1997) should be applied retroactively. Although we dis-

cussed the *Payne* decision and recited from it, our holding was limited to our conclusion that "permitting this testimony . . . did not constitute an *ex post facto* law." 322 Ark. at 109, 907 S.W.2d at 689.

In *Kemp v. State,* 324 Ark. 178, 919 S.W.2d 943 (1996), we again discussed § 5-4-602(4) and dealt with three objections to the admissibility of victim-impact evidence. We held the statute was (1) not void for vagueness, (2) not violative of the Eighth Amendment, citing the *Payne* decision, and (3) not violative of Ark. Const. art. 2, § 9. We added our conclusion that the admission of the evidence was not, in that instance, so prejudicial as to be violative of Mr. Kemp's right to due process of law. Mr. Kemp's argument concerning the conflict between the statute providing the procedure for weighing aggravating and mitigating circumstances was part of his *constitutional* argument. Here is what we said about it:

> He [Kemp] further contends that, because there is no place in the Arkansas statutory weighing process for the jury to consider victim-impact evidence, our victim-impact statute is violative of the Eighth and Fourteenth Amendments to the United States Constitution and Ark. Const. art. 2, § 9. Particularly, appellant contends that the victim-impact statute conflicts with Ark. Code Ann. § 5-4-603 and -604 (Repl. 1993), which direct the jury to determine whether aggravating circumstances exist, to weigh any aggravating circumstances against any mitigating circumstances, and to determine whether the aggravating circumstances justify a death sentence beyond a reasonable doubt. Again, we find appellant's argument unpersuasive.

324 Ark. at 204; 919 S.W.2d at 956. We said nothing more about the statutory conflict but proceeded to discuss the constitutional arguments at some length. We did not further address the issue whether victim-impact evidence was relevant to the statutory aggravating circumstances or should have been admissible in the sentencing phase of a capital-murder trial sought so carefully to be controlled by §§ 5-4-603 and 5-4-604.

No doubt we rejected Mr. Kemp's constitutional arguments because they were foreclosed by the *Payne* decision. If, as the majority opinion in the case now before us suggests, we rejected

the basic statutory conflict argument at all, it was because the argument presented by Mr. Kemp was "unpersuasive." That hardly means that an argument that *is* persuasive may not be considered in this case.

In *Lee v. State,* 327 Ark. 692, 942 S.W.2d 231 (1997), we dealt only with a due process challenge to the victim-impact evidence statute. There was no objection to the evidence on the basis that it was not relevant to the aggravating circumstances presented at the trial.

In this case, the objection raising the issue of the statutory conflict was made on Mr. Noel's behalf. The contention that the basic capital-punishment procedure is violated by the admission of victim-impact evidence is before us, not as a part of an Eighth Amendment or other constitutional argument, but on its own, as a purely statutory argument. The question is one we have not addressed directly, and we are confronted with an argument on the point that *is persuasive.*

What, then, is the extent to which our General Assembly has provided for the admission of victim-impact evidence in capital sentencing proceedings and rendered "victim impact" a relevant sentencing factor?

Following the *Payne* decision, the General Assembly enacted Ark. Code Ann. § 5-4-602(4) (Repl. 1997), which provides in part that

> "[i]n determining sentence, evidence may be presented to the jury as to any matters *relating to aggravating circumstances* enumerated in § 5-4-604, any mitigating circumstances, *or any other matter relevant to punishment, including, but not limited to, victim impact evidence* . . . .

The Act also contained the following language: "It is the express intention of this act to permit the prosecution to introduce victim impact evidence as permitted by the United States Supreme Court in *Payne v. Tennessee* . . . ."

Section 5-4-602(4) limits the evidence to be presented in determining sentence to "any matters relating to aggravating circumstances enumerated in § 5-4-604, any mitigating circum-

stances, or any other matter relevant to punishment, including, but not limited to victim impact evidence. . . ." Evidence of victim impact, therefore, must be relevant to aggravating circumstances or mitigating circumstances, or it must be "relevant to punishment." The death-penalty punishment scheme appears in § 5-4-603(a) as follows:

> The jury shall impose a sentence of death if it unanimously returns written findings that:
> (1) Aggravating circumstances exist beyond a reasonable doubt; and
> (2) Aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and
> (3) Aggravating circumstances justify a sentence of death beyond a reasonable doubt.

The statutory aggravating circumstances at the time of the trial were those now stated in Ark. Code Ann. § 5-4-604(1) through (9) (Repl. 1997). (A tenth aggravating circumstance, not relevant here, was added in 1997.) They are as follows:

> (1) The capital murder was committed by a person imprisoned as a result of a felony conviction;
> (2) The capital murder was committed by a person unlawfully at liberty after being sentenced to imprisonment as a result of a felony conviction;
> (3) The person previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person;
> (4) The person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode;
> (5) The capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody;
> (6) The capital murder was committed for pecuniary gain;
> (7) The capital murder was committed for the purpose of disrupting or hindering the lawful exercise of any government or political function;
> (8)(A) The capital murder was committed in an especially cruel or depraved manner.

(B) For purposes of this subdivision (8), a capital murder is committed in an especially cruel manner when, as part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse, or torture is inflicted. "Mental anguish" is defined as the victim's uncertainty as to his ultimate fate. "Serious physical abuse" is defined as physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. "Torture" is defined as the infliction of extreme physical pain for a prolonged period of time prior to the victim's death.

(C) For purposes of this subdivision (8), a capital murder is committed in an especially depraved manner when the person relishes the murder, evidencing debasement or perversion, or shows an indifference to the suffering of the victim and evidences a sense of pleasure in committing the murder; or

(9) The capital murder was committed by means of a destructive device, bomb, explosive, or similar device which the person planted, hid, or concealed in any place, area, dwelling, building, or structure, or mailed or delivered, or caused to be planted, hidden, concealed, mailed, or delivered, and the person knew that his act or acts would create a great risk of death to human life.

The victim–impact evidence in this case was not "relevant to punishment" because the decision to "punish" a defendant with the death penalty must be the result of the weighing procedure set forth in § 5-4-603. The question thus becomes whether the victim–impact evidence is relevant to the aggravating circumstances contained in § 5-4-604 or mitigating circumstances. The statutory aggravating circumstances are obviously and appropriately limited to evidence of what the *defendant* did or did not do. The victim–impact evidence in this case clearly had nothing to do with any of them; nor was it related in any way to any facts presented as mitigating evidence.

In *State v. Gusek*, 906 P.2d 272 (Or. 1995), the Supreme Court of Oregon confronted the problem created by a victim–impact evidence law that had been adopted as an initiated act. The law in Oregon, as our § 5-4-603, required unanimous jury determination of the existence of one or more specified aggravat-

ing circumstances as a prerequisite to levying the death sentence. The Supreme Court of Oregon held the victim-impact evidence was inadmissible due to its irrelevancy to the aggravating factors stated in the law. The Court said,

> The statutory requirement that the state must prove beyond a reasonable doubt the issues concerning aggravation . . . indicates that the legislature intended that the death penalty would be imposed only on the basis of the enumerated statutory aggravating factors that the state establishes beyond a reasonable doubt . . . . Interpreting the "fourth question," on which neither party has the burden of proof, to allow proof of nonenumerated aggravating factors would allow the imposition of the death penalty on the basis of non-enumerated aggravating factors that were *not* established beyond a reasonable doubt. Such an interpretation would be inconsistent with the legislature's intent to require proof beyond a reasonable doubt of the enumerated aggravating circumstances.

906 P.2d at 279 (emphasis original). The "fourth question" in the Oregon death penalty sentencing law is the general one asking the jurors ultimately whether the death penalty should be imposed.

Although § 5-4-602(4) purports to sanction the use of victim-impact evidence in capital cases if it is merely "relevant to punishment," § 5-4-603 has not been amended to make "victim impact" a relevant sentencing or "punishment" factor. As the Oregon Court found to be the case of the law enacted by the voters in that State, nothing that our General Assembly has done in the wake of the *Payne* decision has altered the basic framework of § 5-4-603. The jury's decision whether to impose the death penalty still depends entirely on the weighing of statutorily defined aggravating factors and any relevant mitigating factors. *See* Ark. Code Ann. §§ 5-4-604, 5-4-605. Thus, insofar as § 5-4-602(4) permits the introduction of victim-impact evidence, § 5-4-603 must be viewed as limiting the admissibility of such evidence. Section 5-4-603 requires that victim-impact evidence, before it can be admitted in a capital sentencing proceeding, must be directly relevant to the question whether aggravating or mitigating circumstances exist in the case at hand.

In addition to the Supreme Court of Oregon, courts in other states have reached similar conclusions. *See, e.g., Commonwealth v. Fisher,* 681 A.2d 130 (Pa. 1996); *Lambert v. State,* 675 N.E.2d 1060 (Ind. 1996); *State v. Carter,* 888 P.2d 629 (Utah 1995); *Bivins v. State,* 642 N.E.2d 928 (Ind. 1994). The majority opinion criticizes the reference to these cases on the ground that the states in which they were rendered had not enacted statutes making victim-impact evidence "relevant." As noted above, our General Assembly has not simply said that victim-impact evidence is "relevant." Rather, it provided in § 5-4-602(4) that ". . . any other matter relevant to punishment, including, but not limited to victim impact evidence" may be presented. Again, the point here is that the victim-impact evidence in this case was not related to any aggravating factor or mitigating evidence presented and thus cannot be relevant to "punishment," which is controlled by §§ 5-4-603 and 5-4-604.

In the case at bar, Ms. Hussian's testimony describing the impact of Mr. Noel's crimes on her life and on the life of her family did nothing to establish the existence or non-existence of any aggravating or mitigating circumstances. Her testimony was thus erroneously admitted, and it was most assuredly not harmless beyond a reasonable doubt. The case should be remanded for a new sentencing proceeding.

I respectfully dissent.

IMBER and THORNTON, JJ., join in this opinion.