Jerry WRONE-WALKER *v.* STATE of Arkansas

CACR 04-790 210 S.W.3d 157

Court of Appeals of Arkansas
Opinion delivered June 15, 2005

*Gregory E. Bryant*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Jerry Walker appeals from his convictions for first-degree murder and second-degree unlawful discharge of a firearm from a vehicle. He argues that the trial court erroneously denied his motion for a mistrial after his then wife testified to a confidential communication, violating his interspousal privilege. Appellant does not challenge the sufficiency of the evidence. We hold that, while the communication between appellant and his then wife was privileged, the trial court did not err in denying appellant's motion for mistrial. Accordingly, we affirm.

Appellant was charged in the shooting death of Darren Bouie. Two witnesses testified that, on February 2, 2002, at the intersection of Roosevelt Road and Martin Luther King Drive in Little Rock, a blue car pulled up next to a silver car. Appellant, who was driving the blue car, yelled at the men in the silver car and then fired four to five shots. Dr. Stephen Erickson, a forensic pathologist, testified at trial that Bouie was shot twice in the back and once in the mouth.

Eubangi Polk, Bouie's friend, was the passenger in the silver car.[1] He and Bouie were in the turning lane on Martin Luther King Drive when Polk heard gunshots. He looked to his right and saw appellant firing at them. Polk and Bouie tried to get out of their

---

[1] This was the second trial after the first ended in a mistrial. Polk could not be found; therefore, his testimony from the first trial was read into evidence.

car. When they exited the vehicle, Polk saw the blue car turn right on Roosevelt Road. Bouie was shot several times. Polk testified that Bouie did not have a chance to get the gun that was in the passenger-door console and that he never saw that gun.

Laury Rhinehart, who was married to appellant at the time of the shooting, testified that she and appellant were driving when appellant saw Bouie. Appellant pulled alongside Bouie's car, opened his door, and fired his gun. Rhinehart testified that appellant then entered the car and reloaded his gun. The following colloquy occurred at trial:

> THE STATE: And what did you do to Jerry while he was trying to reload the gun?
>
> RHINEHART: I asked him what was he doing. He said he was getting ready to kill the other guy, too.
>
> COUNSEL FOR APPELLANT: Objection. Ask to approach.
>
> RHINEHART: And I pulled him back —
>
> THE COURT: Okay. Hold on just a second, please, Ms. Rhinehart.
>
> [*at bench conference*]
>
> COUNSEL: Your Honor, reluctantly, I ask for a mistrial because it's clear that she was not supposed to testify as to any communication they had. There was one issue that may have been an exception, but that certainly was not it.
>
> And that is so prejudicial, Judge, he cannot get a fair trial when you're talking about he said he was going to reload and kill the other person. I'd ask for a mistrial.
>
> THE STATE: Judge, first of all, that question was, what did he say? That wasn't what I asked. But, in any event, the answer or what was actually stated is not a confidential communication made in the course and furtherance —
>
> THE COURT: Hold on, Mr. Hout. Just hold on. Now —

THE STATE: In order for it to be a privileged communication, it has to be a confidential communication made in the course and furtherance of the marriage in confidence. He is there at the street, the windows are down, gunshots are fired, there are people all around. That's not something that's in — it's not a confidential communication.

Even if it were, this certainly can be cured by an admonishment to the jury. This is not something that —

THE COURT: What, my notes indicate that you specifically asked her what he said at the time. Do you recall that? Did you not ask her what —

THE STATE: No, sir. I thought I asked, what did he do at the time? What did you do while he was shooting? We can check the record.

COUNSEL: The point is, Judge, quite frankly, Judge, I think Mr. Hout may be right, but I'm not positive about that.

THE COURT: Okay.

COUNSEL: This is a problem, Judge. This is his witness. You admonished him to advise her. I'm assuming he did that. It's still his witness. He's stuck with her testimony. What could be more prejudicial than have my client tell her he was going to kill the other one? What could be more prejudicial than that?

It's unfortunate, Judge, but the cow is out of the barn, the milk is contaminated, and we can never get a fair trial. There's nothing you can say to take that back, Judge. I ask for a mistrial.

THE STATE: And, actually, I think that the ruling was that there couldn't be — and, I mean, I did tell her not to mention anything other than what —

THE COURT: I think it was obvious from a response to a previous question that she did not mention a communication at one point in time.

THE STATE: In any event, the ruling was that they couldn't mention any privileged information. And I don't — even though I'll move on and don't want to address that, that's not a privileged communication.

THE COURT: Okay. Well, here's what we're going to do: Mr. Davis has moved for a mistrial. I'm going to deny the motion for mistrial.

Now, with that denied, do you want me to consider any type of admonishment to the jury, Mr. Davis?

COUNSEL: Well, I'm thinking out loud, Judge. I'm kind of stuck between a rock and a hard place. I feel like if I offer some words to that effect, then I'm waiving — because I just simply don't think that — Judge, again, I beg the Court to consider what could be more prejudicial than saying, "He told me he was going to kill the other guy"?

THE COURT: Well, I mean, I'm not so certain that I don't agree with Mr. Hout, that these type of statements for any number of reasons might not be privileged.

But let's just assume, for purposes of our bench conference, that it is. I'm still not convinced that it would be something that would even warrant a mistrial at that point in time.

We don't need to go any further down this road.

THE STATE: No, sir.

THE COURT: So you would like to just stand on the motion for mistrial?

COUNSEL: Quoting one of my former employers, I'm going to stand mute on it, other than to say that I think a mistrial is warranted.

THE COURT: Okay. Well, you've moved for a mistrial, and you've specifically stated the reason for that.

COUNSEL: If the Court determines on its own to make some comment, that's up to the Court.

THE COURT: Well, I'm not going to determine that on my own. I'm not going to make any further comment then. We're getting ready to move on. And this is only the third witness out of 16.

And let me just say this: We don't want to hear anything in argument at the close of this case about that particular statement.

Appellant claimed that the shooting was in self-defense. He testified that on January 27, 2002, he was at Bouie's sister's house when Bouie's brother attempted to rob him. Appellant started running when Bouie and two other men appeared. Appellant stated that he turned around and tackled Bouie's brother. When he fell, the other men started beating him. On February 2, 2002, appellant and his wife left their hotel room to have their car repaired. He was driving on Martin Luther King Drive when he stopped at a red light. Appellant stated that he looked to his left and saw Bouie, who "had a sneaky grin and pulled his pistol up and started rolling down his window." Appellant testified, "I opened my door, jumped out of the car, closed my eyes and started shooting in the car at him."

The jury found appellant guilty of first-degree murder and second-degree unlawful discharge of a firearm. Appellant was sentenced as a habitual offender to a total of eighty years in the Arkansas Department of Correction. This appeal followed.

For his sole point on appeal, appellant argues that his conviction should be reversed because testimony was admitted in violation of the interspousal privilege. While appellant argues that reversal should be granted on the evidentiary issue, he requested a mistrial at trial. Accordingly, our review is of the mistrial motion. A mistrial is an extreme remedy that should only be granted when the error is beyond repair and cannot be corrected by admonishing the jury or other curative relief. *Hudson v. State*, 85 Ark. App. 85, 146 S.W.3d 380 (2004); *Jimenez v. State*, 83 Ark. App. 377, 128 S.W.3d 483 (2003). An admonition to the jury usually cures a prejudicial statement unless the statement is so patently inflammatory that justice cannot be served by continuing the trial. *Hudson v. State, supra*. The trial court has wide discretion in granting or denying a motion for mistrial, and we will not reverse the trial court's decision absent an abuse of that discretion or manifest prejudice to appellant. *Id.* Among the factors to be considered in

determining whether or not a trial court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Jimenez v. State, supra.*

 Rule 504 of the Arkansas Rules of Evidence (2004) states, in pertinent part:

> (a) *Definition.* A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.
>
> (b) *General Rule of Privilege.* An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse.

A person can only claim interspousal privilege if the communication was not intended to be disclosed to any other person. *Barrett v. State,* 354 Ark. 187, 119 S.W.3d 485 (2003); *David v. State,* 286 Ark. 205, 691 S.W.2d 133 (1985). The burden of proving that a privilege applies is upon the party asserting it. *Shankle v. State,* 309 Ark. 40, 827 S.W.2d 642 (1992); *Kinkead v. Union Nat'l Bank,* 51 Ark. App. 4, 907 S.W.2d 154 (1995).

 Appellant's communication to Rhinehart was privileged. Rhinehart testified that appellant told her that he was going to "kill the other guy" while appellant was reloading his gun in the car. There is no indication that a third party heard the communication. *See Sumlin v. State,* 273 Ark. 185, 617 S.W.2d 372 (1981) (holding no privilege existed when the communication was overheard by a third party). Because of the incriminating nature of the statement, we can infer that appellant did not intend for Rhinehart to disclose his remark. *See Findley v. State,* 307 Ark. 53, 818 S.W.2d 242 (1991) (holding no privilege when appellant's statement to wife was intended to be disclosed to appellant's sister). Appellant's communication was a private communication to his wife not intended for disclosure. Therefore, it was a privileged interspousal communication.

 However, we hold that the trial court did not err in denying appellant's motion for mistrial. While the statement should have been excluded, any error in allowing the statement

into evidence was harmless. Where evidence of guilt is overwhelming and the error is slight, we can declare the error harmless and affirm. *Proctor v. State*, 349 Ark. 648, 79 S.W.2d 370 (2002). Here, appellant presented little evidence that the shooting was in self-defense. One who asserts the defense of justification for a homicide must show not only that the person killed was using deadly force, but that he responded with only such force as was necessary and that he could not have avoided the killing. *Smith v. State*, 337 Ark. 239, 988 S.W.2d 492 (1999); *Ghoston v. State*, 84 Ark. App. 387, 141 S.W.3d 907 (2004). Further, Arkansas Code Annotated section 5-2-607(a) (Repl. 1997) provides that a person may not use deadly force in self-defense if he knows that he can avoid the necessity of using that force with complete safety by retreating, unless that person is in his dwelling and was not the original aggressor. *See also Ghoston v. State, supra*. Bouie was shot twice in the back and once in the mouth. Appellant offered little evidence, outside of his own testimony that Bouie allegedly pulled out a gun, that Bouie did anything threatening or posed any immediate harm. He offered no evidence that he attempted to retreat from any alleged danger. Finally, the trial court instructed the State not to mention the communication again, and the State complied. Any prejudice in admitting the privileged communication was slight in comparison to the overwhelming evidence that appellant intended to kill Bouie. Accordingly, the trial court correctly denied appellant's motion for mistrial.

Affirmed.

BIRD and VAUGHT, JJ., agree.