Cite as 2026 Ark. App. 288

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-25-300

| | | |
|---|---|---|
| CHARLES MCCHRISTIAN | | Opinion Delivered May 6, 2026 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CR-19-2151] |
| V. | | |
| | | HONORABLE LATONYA HONORABLE, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**MIKE MURPHY, Judge**

A Pulaski County Circuit Court jury convicted appellant Charles McChristian of second-degree sexual assault against his twelve-year-old cousin (MV). He was sentenced to a term of thirty years in the Arkansas Division of Correction. On appeal, McChristian does not challenge the sufficiency of the evidence; rather, he argues that the court erred in allowing evidence under Arkansas Rule of Evidence 404(b) and in denying his motions for mistrial. We affirm.

I. *Relevant Facts and Procedural History*

McChristian was charged on May 17, 2019, with second-degree sexual assault. Before trial, McChristian filed a motion for disclosure of evidence the State intended to introduce at trial pursuant to Arkansas Rule of Evidence 404(b). The State responded and disclosed that it planned to call Christina Martin as a witness under Rule 404(b) and informed

McChristian that she would testify that, beginning when she was in fifth or sixth grade, McChristian would engage in sexual intercourse with her and ejaculate on her. The proffer also stated that Martin would testify that McChristian is her uncle who is twelve years older than she is. The trial court ruled that the testimony would be permitted.

Also, before trial, the parties appeared before the court to discuss whether Rule 404(b) evidence involving sexual misconduct with another girl, Kanesha Lee, would be permitted at trial. The State's investigation revealed that McChristian began having sexual relations with her when she was twelve and subsequently fathered multiple children with her, which was confirmed by DNA evidence. The court permitted her to testify as well.

On the morning of trial, McChristian asked the court for an "actual evidentiary hearing" on the question of Martin's testimony. The parties debated the appropriateness of a hearing on the Rule 404(b) question. McChristian argued that without a hearing detailing Martin's proposed testimony, he was unable to offer evidence that he could not have sexually assaulted Martin because he was not in Little Rock or North Little Rock when the assaults were alleged to have occurred. McChristian did not proffer what this evidence was. In addition, he argued that a hearing was needed to establish that the assaults of Martin were akin to what was alleged to have happened to MV, the minor cousin here. The trial court deferred ruling on the Rule 404(b) issue until "after the jury was situated and [it] had time to review a couple of cases." After jury selection, the trial court denied the motion to exclude both Rule 404(b) witnesses.

At trial, MV testified that on June 13, 2018, she was twelve years old and at her grandmother's house in North Little Rock. McChristian, who was forty-five-years-old, stopped by the house later in the day. At some point MV left the house with McChristian to "go get [grandma] some food." But instead of going directly for food, McChristian drove to a park and stopped the car in a parking lot. After McChristian unsuccessfully tried to make a phone call, he and MV went to a nearby building that contained restrooms. After MV had used the ladies' bathroom, she waited outside the men's room for McChristian. She stood outside the men's room until McChristian told her to "scoot over a bit." MV did so and was able to see inside the men's room. She saw McChristian looking at her and "jerking off."

McChristian left the men's room and approached MV. At this time, "he just got behind [MV] and [she] felt his private against [her] butt and started crying." He began to move his penis against her butt from "side to side." Eventually, they went to a nearby fast-food restaurant to obtain the food the grandmother had requested. McChristian dropped MV off at the house. At that time, MV told her cousin what had happened, and later that evening, MV told her mother.

McChristian moved for a mistrial several times throughout the jury trial. Notably, he moved for a mistrial once during the testimony of MV's mother and twice during the State's closing argument. He contended that the mother had made incurable prejudicial statements during her testimony and that the State had shifted the burden of proof and attacked defense counsel in its closing argument. The motions for mistrial were denied.

3

McChristian was convicted of second-degree sexual assault and sentenced to thirty years in the Arkansas Division of Correction. He now appeals.

## II. *Analysis*

### A. Martin's Testimony

McChristian contends that the trial court abused its discretion when it allowed Christina Martin to testify under the pedophile exception to Arkansas Rule of Evidence 404(b). He asserts that because Martin testified during direct examination that McChristian "molested us" as opposed to "molested her," her testimony was beyond the scope of the trial court's ruling permitting evidence pursuant to the pedophile exception. Specifically, the State asked Martin if she knew McChristian when she was growing up and what happened during that time. Martin responded, "He used to molest us." Following a prompt objection by McChristian, the State responded that the "us" comment was a surprise and not intentionally elicited. At McChristian's request, the admonition specifically informed the jury that it was to "disregard the comment about he molested us. You are to disregard the us and to limit your consideration to the witnesses who have or will testify in this matter."

While McChristian argues that reversal should be granted on the evidentiary issue, he requested a mistrial at trial. Accordingly, our review is of the mistrial motion. A mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected by admonishing the jury or other curative relief. *Walker v. State*, 91 Ark. App. 300, 307, 210 S.W.3d 157, 162 (2005). An admonition to the jury usually cures a prejudicial statement unless the statement is so patently inflammatory that justice cannot be served by

4

continuing the trial. *Id.* The trial court has wide discretion in granting or denying a motion for mistrial, and we will not reverse the trial court's decision absent an abuse of that discretion or manifest prejudice to appellant. *Id.*

Here, the State's action was inadvertent, and it did not intentionally elicit the response from Martin. Moreover, McChristian received the admonition he requested. Among the factors to be considered in determining whether a trial court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Walker*, *supra*. For these reasons, the trial court's denial of McChristian's mistrial motion was not an abuse of discretion.

McChristian also asserts that Martin's testimony was inadmissible because it was "wholly incredulous." According to McChristian, he was incarcerated during the time that Martin testified he molested her. On appeal, McChristian asserts that he was in prison during much of the time Martin testified that he sexually abused her. However, during the pretrial argument on the admissibility of Martin's testimony, McChristian simply informed the trial court that the assaults could not have occurred because he "was not in Little Rock or North Little Rock at the time of the assaults"; he never informed the trial court that he was incarcerated during the times Martin alleged she was assaulted by him. Parties are bound by the scope and nature of the objections and arguments presented at trial. *Meacham v. State*, 2025 Ark. 27, at 12, 707 S.W.3d 473, 481. Accordingly, this argument is not preserved for review.

B. Burden Shifting

McChristian contends that the State improperly shifted the burden of proof during its closing argument when it was addressing his testimony that he could not have sexually abused Martin because he was incarcerated during the times Martin testified she was abused. During closing, the State said:

> But Charles McChristian also was a little unclear on dates when he was testifying. Can't remember when he was in prison, can't remember when he was out. [Defense counsel] walked him through some dates on a piece of paper, while the defendant nodded along, but the Defense didn't bring anyone from the ADC to explain any of that paperwork to you.

Initially, the trial court granted a mistrial, but it withdrew its ruling after the State argued against the mistrial. Specifically, the State cited *Doll v. State*, 2020 Ark. App. 153, 598 S.W.3d 47, which states that the State may comment in closing argument that a defendant did not call witnesses, other than the defendant, to establish facts or theories about the case, and doing so does not shift the burden of proof to the defense. In response, McChristian argued that "[this] was a comment upon the fact that we failed to call somebody from the ADC to verify a record when we'd have no obligation to do that anyway to call any witness."

Any arguments that McChristian now makes on appeal that he did not make to the trial court will not be addressed. *See Jones v. State*, 2012 Ark. 38, at 5, 388 S.W.3d 411, 414. However, because the issue was properly preserved, we will address it in the scope and nature of the objection and argument made below.

The trial court did not abuse its discretion when it permitted the prosecutor to comment on McChristian's failure to give corroborating testimony about his time in jail.

6

When the defense, by adopting a particular strategy, opens the door for the prosecution to respond to evidence submitted or statements made by defense counsel, statements made by the prosecution to rebut the defense strategy are not necessarily impermissible references to the defendant's failure to testify. *Turner v. State*, 2016 Ark. 96, at 5–6, 486 S.W.3d 757, 761. Here, it was McChristian who brought up his jail time. The State's argument amounted to a permissible attack on McChristian's credibility and did not shift the burden. Thus, there was no abuse of discretion.

### C. Statement About Counsel

McChristian contends the trial court improperly failed to grant his second motion for a mistrial during closing argument. During closing argument, the State, discussing MV, stated:

> She came in here, she sat right there in front of the man who sexually assaulted her and she told you the truth, that Charles McChristian assaulted her. As for her demeanor, [defense counsel] seemed offended yesterday that [MV] was crying.

McChristian's counsel moved for a mistrial and argued that the State "had no right to talk about me in this case." He went on to say, "[I]t actually is biased because one of the instructions you said like or dislike of the attorney has nothing to do with the case." The trial court denied the motion for mistrial but gave an admonition to the jury upon McChristian's request: "[Y]ou are not to consider any like dislike of a party, an attorney or witness in this matter to factor into your consideration when deliberating to reach a verdict. And also keep in mind that comments, arguments of counsel are not evidence."

A trial court is given broad discretion in controlling counsel in closing arguments, and we will not disturb the trial court's decision absent a manifest abuse of discretion. *Noel v. State*, 331 Ark. 79, 89, 960 S.W.2d 439, 444–45 (1998). Remarks that are so prejudicial as to mandate a reversal are rare and require an appeal to the jurors' passions. *Id.*

The State's argument did not rise to the level of a rare statement that appeals to jurors' passions that would require reversal. But even assuming that the prosecutor's argument was not appropriate, any prejudice was cured by the trial court's admonishment. Indeed, McChristian could have received a sentence of forty years, but he did not. Instead, the jury recommended a sentence of thirty years. *See Castillo v. State*, 2023 Ark. App. 313, at 7, 669 S.W.3d 609, 613 (holding that prejudice cannot be presumed when the jury sentences a defendant to less than the maximum sentence)

### D. Improper Testimony

McChristian contends that during the guilt-phase testimony by MV's mother, the mother "made a comment about 'sick'" and said that McChristian was "nothing but a rapist." These comments were made after she was released from the witness stand. According to McChristian, these comments warranted a mistrial. Without any factual development, he generally asserts that the "comments were so prejudicial that [he] was denied a fair trial."

McChristian makes no argument about how these statements made by the mother were prejudicial let alone so prejudicial that an admonition would have been worthless. Because he neither develops the argument nor cites convincing authority in support of his assertion, we affirm on this point. This court will not develop arguments for parties. *See Sims*

*v. State*, 2015 Ark. 363, 472 S.W.3d 107. Moreover, the court admonished the jury, and McChristian did not receive the maximum sentence, further undermining any claim of prejudice.

### III. *Conclusion*

Because none of the challenged rulings constituted an abuse of discretion, the conviction and sentence are affirmed.

Affirmed.

TUCKER and BARRETT, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.